Ada VAN HARKEN, et al., Plaintiffs,

v.

CITY OF CHICAGO, Defendant.

No. 94 C 6502.

United States District Court,
N.D. Illinois,
Eastern Division.

Nov. 6, 1995.

Dana Andrew Alden (Walter Maksym & Associates), Oak Brook, IL, for Plaintiff.

Charles Levesque, Kenneth Schmetterer (City of Chicago, Law Department Corporation Counsel), Chicago, IL, for Defendant.

## MEMORANDUM OPINION AND ORDER

SHADUR, Senior District Judge.

Ada Van Harken, Alex French and Michael Bennett, both individually and as class

representatives, have brought suit against the City of Chicago ("City"), charging that City's Administrative Adjudication of Parking Violations Ordinance (the "Ordinance," Chicago Municipal Code of 1990 [1] §§ 9–100–010 *et seq.*) violates the Due Process Clauses of both the United States and Illinois Constitutions. Plaintiffs assert their federal claims under 42 U.S.C. § 1983 ("Section 1983") and their state law claims under the supplemental jurisdiction provision of 28 U.S.C. § 1367(a).

City has moved to dismiss all of plaintiffs' claims under Fed.R.Civ.P. ("Rule") 12(b)(6), and the motion is fully briefed. For the reasons stated in this memorandum opinion and order, the plaintiff class (defined somewhat more narrowly than in plaintiffs' Second Amended Complaint) is certified, and City's motion is granted in full. All of plaintiffs' claims and hence this action are dismissed with prejudice.[2]

### Facts

Before 1990 violations of City's parking regulations were adjudicated in the Municipal Court of Chicago (1984 Code § 27–365(a)). In 1990 City revamped that system, moving the adjudicative function out of the Municipal Court and into a newly created administrative framework within City's Department of Revenue (Code § 2–80–040(m)).

That move was made pursuant to, and the new administrative procedure was modeled on, Illinois Vehicle Code § 11–208.3 (625 ILCS 5/11–208.3).

Under the administrative procedure created by the Ordinance, when a person with authority to enforce the parking ordinance [3] observes a violation of any parking regulation, the observer must either serve the notice of violation on the operator of the vehicle (if present) or affix the notice to the vehicle in a conspicuous place (Code § 9–100–030(b)). In addition to other required information.[4] the notice informs the ticket recipient that within seven days from the date of the notice the ticket recipient may (Code § 9–100–050(a)):

(1) pay the indicated fine; or, in the manner indicated in the notice, either (2) submit the materials set forth in Section 9–100–070 to obtain an adjudication by mail; or (3) request an administrative hearing as set forth in Section 9–100–080 to contest the charged violation.

If the ticket recipient fails to choose any of those three options, a second notice of violation is sent (Code § 9–100–050(d)). Once again the ticket recipient has the same three options (*id.*). If the ticket recipient fails to choose any of the options within 14 days after receiving the second notice, a determi-

1. All further references to the 1990 version of the Chicago Municipal Code will take the form "Code §—." References to earlier versions of the Code will take the form "— [indicating the year] Code §—."

2. In the course of briefing both parties have submitted matters outside of the pleadings, which (with limited exceptions, such as this Court's ability to take judicial notice of certain matters) is inappropriate under Rule 12(b)(6). Rule 12(b) gives the option of either (1) considering the extraneous materials and treating the motion as one for summary judgment under Rule 56 or (2) excluding the materials. Because it is clear from the face of the Complaint that plaintiffs would not be able to obtain relief under *any* related set of facts, it is unnecessary to consider the extraneous materials with one possible exception: the form of contract by which City hires its hearing officers, which is really incontrovertible and is merely confirmatory of the legal proposition (established independently of the contract) that no due process violation is involved because of any alleged financial interest on the

part of the hearing officers. This motion is analyzed under familiar Rule 12(b)(6) principles.

3. That includes "any police officer, traffic control aide, other designated member of the police department, parking enforcement aide or other person designated by the city parking administrator ..." (Code § 9–100–030(b)).

4. Code § 9–100–030(b) requires that the notice include the identification number of the person issuing the notice, the parking regulation allegedly violated, the make and state registration number of the vehicle and the place, date, time and nature of the alleged violation. Code 9–100–050(a) also requires that the notice include the applicable fine, the monetary penalty that will be assessed for late payment, a warning that vehicle immobilization and driver's license suspension may be imposed if fines or penalties are not paid in full, and notice that payment of the fine will operate as final disposition. Finally, the issuer must certify the correctness of the information on the notice by signing his or her name (Code § 9–100–030(b)).

nation of liability will be entered in the amount of the fine indicated on the notice (*id.*).

Some common elements are shared by the adjudication-by-mail and administrative-hearing options. First, each is conducted by a "hearing officer appointed by the city parking administrator" (Code §§ 9–100–070(a) and 9–100–080(a)). Second, the standard and burden of proof are the same (Code §§ 9–100–070(c) and 9–100–080(e)):

No violation may be established except upon proof by a preponderance of the evidence; provided, however, that a parking violation notice, or a copy thereof, issued in accordance with Section 9–100–030 shall be prima facie evidence of the correctness of the facts specified therein.

Finally, the ticket recipient is "limited to one or more of the following grounds" for challenging the ticket (Code § 9–100–060):

(1) That the respondent was not the owner or lessee of the cited vehicle at the time of the violation;

(2) That the cited vehicle or its state registration plates were stolen at the time of the violation;

(3) That the relevant signs prohibiting or restricting parking were missing or obscured;

(4) That the relevant parking meter was inoperable or malfunctioned through no fault of the respondent;

(5) That the facts alleged in the parking violation notice are inconsistent or do not support a finding that the specified regulation was violation [sic].

Under the adjudication-by-mail option, the ticket recipient may provide documentary evidence that rebuts the charge and a written statement setting forth the facts relevant to establishing a defense (Code § 9–100–070(b)). In an administrative hearing the ticket recipient may appear pro se or may be represented by an attorney (Code § 9–100–080(b)), formal rules of evidence do not apply (Code § 9–100–080(c)) and the hearing officer may issue subpoenas to secure the attendance and testimony of witnesses (Code § 9–100–080(d)).

After considering the materials submitted by mail, or after the administrative hearing takes place, the hearing officer enters a determination of no liability or of liability in the amount of the fine. That determination becomes a final judgment for purposes of the Administrative Review Law of Illinois (Code §§ 9–100–070(d) and 9–100–090(a)).

*Class Certification*

Rule 23(c)(1) mandates that a district court determine whether a class should be certified "as soon as practicable" after the commencement of the action. Whatever imprecision is inherent in the use of that phrase, it is clear that "as soon as practicable" means before a decision on the merits (*Koch v. Stanard,* 962 F.2d 605, 607 (7th Cir.1992) and cases cited there).

In this instance the waters have been muddied by City's prompt filing of a motion to dismiss plaintiffs' initial effort at a complaint, followed by delays (in the form of continuances while plaintiffs' counsel was recasting the allegations rather than briefing that original motion) until plaintiffs' counsel refashioned their pleading into its ultimate form as the Second Amended Complaint (referred to here, for convenience, simply as the "Complaint"). City then refocused its attack on that final pleading by a renewed motion to dismiss, and the parties have since devoted their attention—and a substantial amount of time—to the briefing process.

Although the parties have thus concentrated on briefing the motion to dismiss, this Court wishes to remain faithful to the command of Rule 23(c)(1) as construed in *Koch* and other cases. This opinion therefore addresses the question whether this action "is to be maintained" as a class action (that, rather than the term "certification," is the actual locution of Rule 23(c)(1)) before it turns to City's Rule 12(b)(6) motion.

Plaintiffs propose to represent a class comprising (Complaint ¶ 4):

the thousands of individuals, the exact number of which can be determined from the records of Defendant, who have received or may receive during the course of this litigation before final determination

from the City of Chicago, one or more of the following styled notices: Parking Violation Notices, Notice of Determination, and Notice of Final Determination.

Complaint ¶ 6 sweepingly asserts that the proposed class is viable under each of the subdivisions of Rule 23(b).

It is familiar territory that one or more members of a putative class may sue as representative parties on behalf of the entire class only if (Rule 23(a)):

> (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

Those prerequisites are not seriously in question here: Surely the proposed class is sufficiently numerous (it would consist of "thousands of individuals"); constitutionality of the Ordinance is an issue of law common to all members of the proposed class; named plaintiffs Van Harken, French and Bennett assert claims that are typical of those of the class; and there is no indication that those named plaintiffs (and, as the case law gloss on the Rule also makes relevant, their counsel) would not adequately represent the class. Moreover, this is a classic candidate for a Rule 23(b)(2) class action, for:

> the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole.

City's only argument as to the proposed class is that it should not include persons who have paid rather than contested their parking tickets (City Mem. 8–9). City frames its argument in terms of standing: It contends that persons who paid their tickets did not give City the opportunity to provide

due process, and thus do not have standing to challenge the Ordinance.

■■ That argument is persuasive as to those persons who paid their tickets without availing themselves of an in-person or by-mail hearing. They cannot be heard to complain, because they have waived their opportunity to utilize the review procedures that they would now challenge.[5]

Plaintiffs counter that the present situation is instead analogous to *Atchison, T. & S.F. Ry. v. O'Connor*, 223 U.S. 280, 286, 32 S.Ct. 216, 217, 56 L.Ed. 436 (1912), where Justice Holmes set out an exception when:

> the citizen is put at a serious disadvantage in the assertion of his legal, in this case of his constitutional, rights, ... justice may require that he should be at liberty to avoid those disadvantages by paying promptly and bringing suit on his side.

But plaintiffs omit the portion of that same opinion that specifies that the stated exception applies when "the party indicates by protest that he is yielding to what he cannot prevent ..." (*id.*). What was contemplated by *Atchison* is a case in which a person pays under protest and promptly brings suit challenging the state action. Nothing of the sort is alleged here, so that the ticketed persons to whose inclusion City objects do not meet the terms of the *Atchison* exception.

Consequently, this Court certifies a class under Rule 23(b)(2) consisting of those persons:

1. who have received from the City of Chicago a Parking Violation Notice, a Notice of Determination or a Notice of Final Determination; and

2. who at the time of this action still have the right pursuant to the Code to challenge the parking violation via an in-person or by-mail hearing, or who have in the past challenged a parking violation via an in-person or by-mail hearing and, on a finding of liability, have

---

**5.** This ruling is not at odds with *Patsy v. Florida Bd. of Regents*, 457 U.S. 496, 102 S.Ct. 2557, 73 L.Ed.2d 172 (1982), which held that there is no administrative or judicial exhaustion requirement under Section 1983. It is not that persons who paid their tickets had to exhaust any administrative remedies before mounting a constitutional attack on the Ordinance. Instead the point is that the persons who paid their tickets do not have a constitutional claim at all because they cannot claim the inadequacy of the process that they made no effort to bring into play.

then paid the applicable fines and penalties.

As indicated by paragraph 2, the class expressly excludes persons who paid their parking tickets without requesting an in-person or by-mail hearing, as well as persons who were accorded a determination of parking violation liability pursuant to Code § 9–100–050(d).

With the threshold issue of class certification thus resolved, it is time to turn to the merits. That calls for an initial identification of the nature of plaintiffs' claims.

### Plaintiffs' Claims

Plaintiffs advance multiple due process claims in their Complaint.[6] Thus they contend that parking violations are criminal in nature and that the administrative arrangement created by the Ordinance lacks the necessary criminal due process protections (Counts II and VII). Even if parking regulations are not found to be criminal, plaintiffs assert three procedural due process deficiencies in the administrative arrangement:

1. It deprives ticket recipients of the right to a fair and impartial adjudicator (Counts I and VI).

2. It impermissibly causes persons who choose an adjudication by mail to waive their right to an in-person hearing (Counts III and VIII).

3. It unconstitutionally limits their ability to defend against the parking tickets (Counts V and X).

Finally, plaintiffs invoke the substantive component of the Due Process Clause to urge that the administrative procedure is skewed against ticket recipients and produces arbitrary and erroneous findings of liability (Counts IV and IX).

■ For its part City argues that plaintiffs' Complaint fails to state a claim for which relief can be granted. That calls into play the familiar Rule 12(b)(6) test: whether, accepting all of plaintiffs' well-pleaded factual allegations as true and drawing all reasonable inferences in their favor, relief could be granted if plaintiffs were able to prove facts consistent with the allegations in the Complaint (*Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 2232–33, 81 L.Ed.2d 59 (1984)).

As a preliminary matter, however, City claims that even those plaintiffs who opted for an in-person or by-mail hearing lack standing to challenge the Ordinance because they failed to avail themselves of the opportunity for review available under the Ordinance. Specifically City argues that because plaintiffs did not appeal their claims in state court via the Illinois Administrative Review Law,[7] they should be foreclosed from arguing

---

6. Plaintiffs' numerous counts set out five federal and five state constitutional claims that mirror each other. For example, Count I asserts that the Ordinance violates the Due Process Clause of the United States Constitution because it does not provide for a fair and impartial adjudicator, while Count VI repeats the same claim in terms of the Due Process Clause of the Illinois Constitution. Nowhere in plaintiffs' Memorandum is there any discussion of how Illinois decisions support any of their state law claims. Instead they cite federal case law and discuss their claims purely in terms of the United States Constitution. City argues—quite predictably because a higher level of state due process protections could only be harmful to its case—that the Illinois Due Process Clause mirrors the federal Due Process Clause and therefore that the analysis under the federal Constitution is dispositive (City Mem. 4 n. 1). It is axiomatic that the Illinois Constitution must provide at least as much due process protection as the federal Constitution—although Illinois could, of course, provide a higher level of protection. Because both sides have effectively read the two constitutional guaranties as equivalent, this opinion will do the same.

7. Named plaintiffs utilized administrative review to different degrees:

1. Van Harken contested a parking ticket at an in-person hearing (via an attorney), but the hearing officer ruled that Van Harken had violated the statute (Complaint ¶ 29). She claims that she was "thwarted" in her efforts to obtain judicial review when she was unable to obtain a transcript of the administrative hearing.

2. French received a parking ticket for a meter violation, but apparently did not choose any of the three options on the ticket. Upon receiving a second notice, French attempted to request an adjudication by mail, but his appeal was untimely (Complaint ¶¶ 47–48).

3. Bennett received a ticket for parking illegally in a snow route and contested it by mail. He was found liable and did not seek judicial review (Complaint ¶ 55–56).

None of the named plaintiffs has asserted that the administrative process was unconstitutional as applied to him or her. They raise only facial challenges.

that the Ordinance violates the Due Process Clause.

 That position ignores the well-settled teaching of the *Patsy* case that there is no requirement of administrative or judicial exhaustion in Section 1983 cases.[8] As for the state law claims, Illinois also teaches (e.g., *Phillips v. Graham*, 86 Ill.2d 274, 289, 56 Ill.Dec. 355, 361, 427 N.E.2d 550, 557 (1981)) that a plaintiff bringing a facial constitutional challenge need not first exhaust administrative remedies before seeking judicial relief. Consequently City's nonexhaustion argument is without merit.

### Criminal Due Process (Counts II and VII)

Complaint ¶ 90 states that the Ordinance violates the guaranties of the Fifth and Sixth Amendments:[9]

The current system of administrative hearings denies the accused the right to be convicted on proof beyond a reasonable dout [sic], the right of confrontation of adverse witnesses, the right of compulsor [sic] process for obtaining witnesses in one's favor, and the right to a public trial.

That recital of rights belongs to criminal prosecutions—the Sixth Amendment says as much on its face, and the "beyond a reasonable doubt" requirement stemming from the Fifth Amendment also applies only to criminal charges (*In re Winship*, 397 U.S. 358, 361–64, 90 S.Ct. 1068, 1071–73, 25 L.Ed.2d 368 (1970)). Hence plaintiffs' criminal due process claim is meritless unless the parking regulations are indeed criminal in nature, for if not the Ordinance need not provide Fifth and Sixth Amendment protections.

Plaintiffs advance three lines of argument in this area:

1. Violations of City's parking regulations have historically been treated as criminal in nature.

2. Other states treat parking violations as criminal.

3. Sanctions imposed for violations of parking regulations are so punitive as to be a criminal penalty.

This opinion examines those contentions in turn.

### Historical Treatment

Plaintiffs put much weight[10] on their analysis of how City has previously dealt with parking violations. Essentially plaintiffs argue that because the rules and schedule of fines under the current Ordinance are substantially the same as under earlier ordinances, and because in the past City has treated parking violations like criminal prosecutions with ticket recipients getting their day in court, the current Ordinance is unconstitutional because it now provides only an administrative adjudication that lacks the same formal due process protections.

 There is a fundamental and obvious flaw in that position: It presumes that City has historically treated parking violations as criminal because it was forced to do so by the

---

**8.** City's attempted reliance on *Holstein v. City of Chicago*, 29 F.3d 1145 (7th Cir.1994) for the proposition that exhaustion of administrative remedies is a prerequisite to a procedural due process claim is based on a misreading of that case. In *Holstein* the issue was whether a portion of City's ordinance that allowed for the towing of illegally parked cars without a predeprivation hearing was constitutional. In that context the Court of Appeals (*id.* at 1148) relied on *Sutton v. City of Milwaukee*, 672 F.2d 644 (7th Cir.1982) to hold that the Due Process Clause does not require a predeprivation hearing before illegally parked cars are towed. Thus under *Parratt v. Taylor*, 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981) the issue was whether an adequate state law postdeprivation remedy was available to the plaintiff there. *Holstein* is there-fore inapposite: This is not a case where a predeprivation hearing is not feasible.

**9.** Plaintiffs correctly label their claim as a due process violation, because it is the Fourteenth Amendment's Due Process Clause that makes the protections of the Bill of Rights applicable to the States. This opinion will, however, adhere to the conventional and convenient (though technically imprecise) practice of referring to the underlying Bill of Rights provisions (which of course are directly applicable only to the federal government) rather than to the Fourteenth Amendment.

**10.** This is true literally as well as figuratively: 15 pages of plaintiffs' mammoth 76–page Memorandum are dedicated to a detailed presentation of how City has previously treated parking violations.

United States Constitution.[11] No such assumption can be made. It is universally understood that while the United States Constitution provides a solid floor of constitutional protections, the States may build a ceiling of protection over that federal floor. Nothing more than speculation is available to suggest why City had previously provided persons accused of parking violations with the opportunity to challenge their tickets in Municipal Court. Perhaps City was voluntarily extending greater procedural rights to its citizens than those minimally required by the Constitution. Or perhaps City had not yet conceived of a more efficient method of handling parking violations, and so it used the Municipal Court because that mechanism was already in place. Either of those is a wholly plausible explanation.

Thus nothing in City's past handling is probative of what the Constitution demands. Plaintiffs' historical argument is therefore of no help in saving their claim.

### Other States' Treatment

Plaintiffs Mem. 36 also says that Illinois and "[t]he overwhelming majority of other state courts have treated parking violations as criminal offenses." For the reasons just discussed, the long list of state cases that plaintiffs cite does not show that those other states were *constitutionally required* to treat parking violations as criminal prosecutions.

Similarly, the two Illinois cases cited by plaintiffs do not support their contention. They point to the description in *Haggenjos v. City of Chicago*, 336 Ill. 573, 575, 168 N.E. 661, 662 (1929) of a person being "arrested for a violation of the [parking] ordinance" and "found guilty" in "a trial by jury in the municipal court of Chicago"[12] to support their argument that the current Ordinance is unconstitutional because it does not provide the protections of a criminal prosecution. That is a non sequitur for the same reasons already set out. *People v. Chatmon*, 236

Ill.App.3d 913, 924–25, 178 Ill.Dec. 143, 151–52, 604 N.E.2d 399, 407–08 (2d Dist.1992)), where the court ruled that parking on the side of a state road in apparent violation of the Illinois Vehicle Code presented "a reasonable, articulable suspicion of criminal activity," such as to justify a police officer's search of a vehicle following his approach to the vehicle under the authority of *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), is also of no help to plaintiffs. Again the court's language does not show that the illegal parking offense *had* to be handled criminally as a constitutional matter.

### Mendoza–Martinez Test

 Plaintiffs then urge that parking violations are criminal in nature because the sanctions imposed for parking violations are clearly punitive. In that respect *United States v. Ward*, 448 U.S. 242, 248, 100 S.Ct. 2636, 2641, 65 L.Ed.2d 742 (1980) instructs that a two-step approach should be undertaken in analyzing whether a penalty is civil or criminal.

*Ward*'s initial inquiry is whether the legislature's expressed purpose was to create a criminal or civil penalty (*id.*). Here it is clear that City stated its intention to create a civil procedure for adjudicating parking tickets. Code § 9–100–020(a) states:

> The violation of any provision of the traffic code prohibiting or restricting vehicular standing or parking shall be a civil offense punishable by fine, and no criminal penalty, or civil sanction other than that prescribed in the traffic code, shall be imposed.

No clearer indication of legislative intent to create a civil sanction could be imagined.

*Ward*, 448 U.S. at 248–49, 100 S.Ct. at 2641–42 then shifts the analysis to whether, despite the stated intent, "the statutory scheme was so punitive in purpose or effect as to negate that intention." And *Ward, id.*

---

**11.** What is said in the text assumes only arguendo (but does not decide) that parking violations *were* treated as criminal prosecutions under previous ordinances.

**12.** That guilty finding gave rise to a fine of $5— and, as indicated, an appeal to the Illinois Supreme Court! Because those events preceded the great depression (the Illinois Supreme Court's decision was essentially contemporaneous with the stock market crash in 1929), inflation alone cannot explain that situation—and sure enough, the case report discloses that plaintiff Haggenjos was a lawyer (and that he appeared of counsel before the Supreme Court).

at 249, 100 S.Ct. at 2641 has confirmed that the analysis is guided by the factors set out in *Kennedy v. Mendoza–Martinez,* 372 U.S. 144, 168–69, 83 S.Ct. 554, 567–68, 9 L.Ed.2d 644 (1963) (footnotes omitted):

> Whether the sanction involves an affirmative disability or restraint, whether it has historically been regarded as a punishment, whether it comes into play only on a finding of *scienter,* whether its operation will promote the traditional aims of punishment—retribution and deterrence, whether the behavior to which it applies is already a crime, whether an alternative purpose to which it may rationally be connected is assignable for it, and whether it appears excessive in relation to the alternative purposes assigned are all relevant to the inquiry, and may often point in different directions.

*Ward,* 448 U.S. at 249, 100 S.Ct. at 2641–42 also instructs that a statute intended to be civil should be found criminal with "only the clearest proof...."

Sanctions for parking violations currently consist of fines that range from $10 to $100 (Code § 9–100–020(b)) and cannot exceed $200 (Code § 9–4–020). Persons who have accumulated five or more final determinations of parking violation liability may have their vehicle immobilized (Code § 9–100–020), and persons who have accumulated ten or more determinations of liability face the possibility of suspension of their driver's licenses (Code § 9–100–30). However, additional opportunities for hearings are available before the latter two sanctions can be imposed (Code §§ 9–100–020(b) and 9–100–130(c)).

 Four of the *Mendoza–Martinez* factors point strongly toward the conclusion that the fines imposed for violation of the parking regulations are civil. First, a monetary fine limited to $200 is not an affirmative restraint or disability.[13] Next, a violation of the parking regulations does not require a finding of scienter, for no state-of-mind requirement is set out anywhere in the parking regulations.[14] And to shift from the first two to the last two factors in *Mendoza–Martinez,* they too strongly support City's case. While every fine does have some retributive and deterrent effects, there are strong alternative reasons for imposing fines for parking violations, including the regulation of traffic flow and the facilitation of commercial activity.[15] And because fines are limited to $200

---

13. Plaintiffs Mem. 39 offers the far-fetched contention that a person who exercises his or her right to an in-person hearing is "restrained" because he or she is subjected to an obligation (the obligation to appear at the hearing) that is not shared by the public generally. That completely misses the point of the analysis, which gauges whether the sanction itself (and not the procedure for challenging the sanction) *is* an affirmative restraint. Plaintiffs prefer to forget that what must be determined is whether the *fine* is so punitive as to constitute punishment. Moreover, even if the nature of the procedure for challenging a ticket were relevant, the notion that the *opportunity* to challenge a ticket at an in-person hearing is an affirmative restraint is ludicrous. Ticket recipients choose whether or not to contest a ticket in person, and even if a person chooses an in-person hearing no definition of "affirmative restraint" is so broad as to include the voluntary appearance of such a person at an administrative hearing. Finally in that regard, plaintiffs' attempted reliance on *Hensley v. Municipal Court,* 411 U.S. 345, 93 S.Ct. 1571, 36 L.Ed.2d 294 (1973) is wholly misplaced. *Hensley, id.* at 351, 93 S.Ct. at 1574–75 ruled that a person released on his own recognizance pending appeal of a misdemeanor conviction was "in custody" for purposes of habeas corpus because he could be ordered to appear before the court at any time. *Hensley* is patently inapposite here—its situation, in which the petitioner thus constantly faced the possibility of incarceration, bears no analogy to the situation in this case.

14. Plaintiffs' argument to the contrary is based both on a misunderstanding of what scienter means and on a misreading of the Code's definition of "parking." Scienter does not mean "purpose" in the lay sense of the word, as plaintiffs contend. Rather scienter denotes action taken "knowingly" (Black's Law Dictionary 872 (6th ed. 1990)). But even apart from that, the parking regulations do not require an improper purpose at any rate. "Parking" is defined by the Code as "the standing of an unoccupied vehicle otherwise than temporarily for the purpose of and while actually engaged in loading or unloading property or passengers" (Code § 9–4–010). That does not mean, as plaintiffs would have it, that a vehicle's "parking" is limited to its standing for the purpose of the actual loading or unloading—on the contrary, the purpose clause clearly qualifies only the temporary-standing exception to the broad definition of parking.

15. Indeed, *Saukstelis v. City of Chicago,* 932 F.2d 1171, 1173 (7th Cir.1991) has characterized vehicle immobilization by the "Denver boot"—un-

by the Code, such fines can hardly be considered excessive in relation to the alternative purposes stated above.

Two of the middle-listed *Mendoza–Martinez* factors are no worse than equivocal. Again a brief discussion of those factors suffices to show that.

First, although plaintiffs once more urge that fines for parking violations have historically been regarded as punishment, that is certainly less than clear. Plaintiffs point yet again to their extensive analysis of how City has adjudicated parking violations in the past. But once again plaintiffs' aim is off. What is central here is not whether parking violations were prosecuted criminally, but whether the *sanctions* imposed were "punishment." Monetary assessments have traditionally been imposed under both civil and criminal statutes (see, e.g., *Ward v. Coleman*, 598 F.2d 1187, 1193 (10th Cir.1979), *rev'd on other grounds*, 448 U.S. 242, 100 S.Ct. 2636, 65 L.Ed.2d 742 (1980)). So this factor offers plaintiffs scant (if any) comfort.

Similarly unhelpful is the analysis of whether the sanction is imposed for behavior that already is a crime. Plaintiffs contend that Illinois Vehicle Code § 11–1303 (625 ILCS 5/11–1303) already criminalizes parking in prohibited places because illegal parking is characterized as a "petty offense" (625 ILCS 5/11–1303), which is in turn included within the Illinois Criminal Code (730 ILCS 5/5–1–17). That latter section defines "petty offense" as "any offense for which a sentence to a fine only is provided." Plaintiffs urge that such treatment shows that "petty offense" is criminal, a conclusion that does not really withstand analysis. Their argument is seriously undercut by 625 ILCS 5/11–208.3, which bestows upon municipalities the power to set up an administrative system to "adjudicate *civil* offenses carrying fines not in excess of $250" (emphasis added). And that statute's title—"Administration, adjudication of violations of traffic regulations concerning the standing, parking, or condition of vehicles"—certainly suggests that the Illinois General Assembly considers parking violations to be civil offenses. So even giving

plaintiffs the benefit of the doubt, that factor is inconclusive.

That leaves only one remaining *Mendoza–Martinez* factor, the one in which plaintiffs find their strongest support: City's admission that fines do effectuate the goals of retribution and deterrence. But even as to that factor, which may be viewed as cutting in plaintiffs' favor, it is noteworthy that fines also serve other purposes.

In sum, taken as a whole the *Mendoza–Martinez* factors clearly show that the sanctions imposed for parking violations are civil in nature, and thus that criminal due process protections are not constitutionally required. And that analysis, coupled with what has gone before, dooms plaintiffs' criminal due process claims.

*Impartial Decisionmaker*
*(Counts I and VI)*

As a separate contention, plaintiffs claim that the administrative arrangement is unconstitutional because it fails to provide a fair and impartial decisionmaker. That notion rests on the contention that because the Code designates to the Department of Revenue the task of administering the Ordinance (Code § 2–80–040(m)) and because the Department of Revenue is also involved in obtaining revenue for City (Code § 2–80–040), the procedure is inconsistent with due process.

To that end plaintiffs attempt to rely heavily on three Supreme Court cases—*Tumey v. Ohio*, 273 U.S. 510, 47 S.Ct. 437, 71 L.Ed. 749 (1927), *Ward v. Village of Monroeville*, 409 U.S. 57, 93 S.Ct. 80, 34 L.Ed.2d 267 (1972) and *Gibson v. Berryhill*, 411 U.S. 564, 93 S.Ct. 1689, 36 L.Ed.2d 488 (1973)—for the proposition that due process is not afforded when an adjudicator has (or potentially has) a direct or indirect pecuniary interest in the outcome of a case. Plaintiffs place extra emphasis on *Ward*, which held (409 U.S. at 60–61, 93 S.Ct. at 82–84) that "the mayor's executive responsibilities for village finances may make him partisan to maintain the high level of contribution from the mayor's court," thus barring him from presiding over the

doubtedly a form of sanction more severe than a

fine—as "a form of economic regulation."

adjudication of traffic offenses when such a significant part of the village's funds came from fines levied for such violations.[16]

 To begin with, plaintiffs' burden in proving its allegation of partiality is high: They "must overcome a presumption of honesty and integrity in those serving as adjudicators ..." (*Withrow v. Larkin,* 421 U.S. 35, 47, 95 S.Ct. 1456, 1464, 43 L.Ed.2d 712 (1975)). That being said, there are two significant differences between the scheme held unconstitutional in *Ward* and City's administrative arrangement. First, *Ward,* 409 U.S. at 58, 93 S.Ct. at 82 considered it significant that "[a] major part of village income is derived from the fines, forfeitures, costs, and fees imposed by [the mayor] in the mayor's court." Plaintiffs have made no such assertion here (nor, to this Court's knowledge, could they conscientiously do so). Second, and more important, *Ward* was careful to distinguish *Dugan v. Ohio,* 277 U.S. 61, 48 S.Ct. 439, 72 L.Ed. 784 (1928), a case that had held (*Ward,* 409 U.S. at 60–61, 93 S.Ct. at 83) that a mayor who had judicial functions but only limited executive authority was "too remote to warrant a presumption of bias toward conviction in prosecutions before him as a judge."

*Dugan* and not *Ward* is unquestionably more closely analogous to the situation here. As for the adjudicators themselves, the hearing officers, they are independent contractors (not City employees) hired at a modest stipend—$35 per hour—with no quotas, no contingent arrangements and no other economic stake in the outcome of their hearings. And even if those up the administrative ladder (the Parking Administrator or the head of the Department of Revenue) were to be scrutinized (presumably on the attenuated notion that they might be predisposed toward hiring "hanging" hearing officers), neither of them has a level of executive authority anywhere close to that of the mayor in *Ward.* Indeed they could not do so, because the executive authority over City is shared by the Mayor and City Council, with the Department of Revenue having no statutorily defined role (65 ILCS 20/21 *et seq.*).

Again this plaintiffs' claim cannot survive City's motion to dismiss. It is time to turn to the next one.

### Waiver of Right to a Hearing (Counts III and VIII)

Plaintiffs further claim that the Ordinance is unconstitutional because it is set up in such a way that ticket recipients unknowingly waive their due process right to an in-person hearing. This is so, plaintiffs claim, because ticket recipients who choose the adjudication-by-mail option unwittingly forfeit the right to an in-person hearing.

 At its core "[t]he fundamental requirement of due process is *the opportunity to be heard* 'at a meaningful time and in a meaningful manner'" (*Mathews v. Eldridge,* 424 U.S. 319, 333, 96 S.Ct. 893, 902, 47 L.Ed.2d 18 (1976) (emphasis added), quoting *Armstrong v. Manzo,* 380 U.S. 545, 552, 85 S.Ct. 1187, 1191, 14 L.Ed.2d 62 (1965)). That "opportunity to be heard" calls for a notice "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections" (*Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 314, 70 S.Ct. 652, 657, 94 L.Ed. 865 (1950)).

Here plaintiffs do not suggest that ticket recipients are not presented with ample notice of an opportunity for an in-person hearing. Indeed, Complaint ¶ 22 (with respect to plaintiff Van Harken) admits:

22. The Parking Violation Notice provided information on how to contest the notice:

a. The recipient could check the box marked "Contest by Mail" and send a

---

**16.** *Tumey* and *Gibson* are less helpful to Plaintiffs. In *Tumey* the judge (the village mayor) had a direct pecuniary interest in the outcome of the cases that he was trying because he *personally* received the costs imposed on each convicted defendant (273 U.S. at 523, 47 S.Ct. at 441). Similarly, in *Gibson* the arrangement under which the state Board of Optometry heard challenges to optometrist licenses was found unconstitutional because the private optometrists that served on the Board potentially had an indirect but personal pecuniary interest in the outcome (411 U.S. at 578–79, 93 S.Ct. at 1697–98).

signed statement setting forth facts that established a defense.

b. The recipient could check the box marked "Request for In–Person Hearing."

■ Thus blocked from launching a direct attack, plaintiffs offer up a slightly different wrinkle by claiming that the Ordinance is unconstitutional because ticket recipients who choose an adjudication by mail are somehow tricked into waiving their right to an in-person hearing. That of course misses the entire point of the notice requirement: City provides ticket recipients with the *opportunity* to be heard at an in-person hearing, which is all that due process demands. It is absurd to contend that the person notified is somehow deprived of due process because City offers another option— the adjudication by mail—that replaces the in-person hearing *when the ticket recipient so chooses*. Because the ticket recipients are given express notice of the opportunity for a hearing, this aspect of plaintiffs' lawsuit is truly frivolous.

### Proof of "Parking" (Counts V and X)

As best this Court can interpret plaintiffs' rambling Counts V and X, there are two prongs to this facet of their case:

1. As written, the Ordinance relieves City of proving that the ticket recipients "parked at all" (Complaint ¶ 157).

2. Also as written, the Ordinance deprives ticket recipients of the possible defense that they "did not engage in the conduct of parking their vehicles in prohibited locations" (Complaint ¶ 160).

Both of those contentions are wholly empty.

■ First, as this Court pointed out in its July 28, 1995 oral ruling, any claim that the Ordinance relieves City of proving that ticket recipients were "parked" in violation of the ordinance involves a misreading of the statute. As stated earlier, the Ordinance defines "parking" as "the standing of an unoccupied vehicle otherwise than temporarily for the purpose of and while actually engaged in loading or unloading property or passengers" (Code § 9–4–010). "Parking" in that sense is established in prima facie terms by the very

fact that the ticketing officer was able to place the ticket on the unoccupied vehicle—if a loading or unloading operation were in progress, the vehicle operator would be present to receive the ticket.

Plaintiffs attempt to place the burden on City to prove independently of the ticket itself that the ticketed vehicle was standing unoccupied and was *not* parked temporarily for the purpose of loading or unloading property or passengers. Irrespective of where the ultimate burden of persuasion on that issue might lie, in light of what has been said here the common sense reading of the Ordinance would instead call for the ticket recipient to produce some evidence, in response to the prima facie showing of the ticket itself, that the vehicle was parked "temporarily for the purpose of and while actually engaged in loading or unloading property or passengers" in order to challenge the ticket.

■ As to plaintiffs' second contention that they are precluded from arguing that their vehicle was not parked at a prohibited location because the Code limits them to five grounds of defense, Code § 9–100–060(5) specifically gives the ticket recipient the opportunity to show:

[t]hat the facts alleged in the parking violation notice are inconsistent or do not support a finding that the specified regulation was violation [sic].

Obviously that language affords the opportunity to testify, for example, that "my vehicle was not parked at 219 South Dearborn Street" (emphasis on "219 South Dearborn Street," not on "parked").

Here too plaintiffs have failed to state a claim. That leaves only the final set of claims for consideration.

### Substantive Due Process (Counts IV and IX)

Plaintiffs finally assert that the Ordinance violates substantive due process, urging that even if ticket recipients receive the due-process-required notice and opportunity for hearing, the administrative arrangement is arbitrary and capricious because it is unfairly skewed toward a finding of liability against the ticket recipient. Plaintiffs point out that

the Ordinance makes the information contained in the notice prima facie evidence of liability, and they state further that hearing officers regularly make determinations of liability without additional evidence or sworn testimony from the ticketing officer.

■■■■■ Any such substantive due process claim does not fall on fertile soil. Substantive due process "allows persons harmed by state regulation to complain that the regulation is so unreasonable a deprivation of life, liberty, or property that it is unconstitutional even if adopted and applied in conformity with the most rigorous procedural safeguards, so that no denial of due process of law in the usual sense can be shown" (*Illinois Psychological Ass'n v. Falk*, 818 F.2d 1337, 1342 (7th Cir.1987)). Except in cases when "fundamental rights" are implicated—and there is no colorable argument that any such fundamental right is involved here—substantive due process claims fail unless the challenger can show that the challenged law bears no rational connection to a governmental interest or that it is so excessive in relation to a valid governmental purpose as to be punitive (*Reno v. Flores*, 507 U.S. 292, 303–04, 113 S.Ct. 1439, 1448, 123 L.Ed.2d 1 (1993)).[17]

■■■■ Plaintiffs cannot meet that high standard. Their primary argument is that the administrative arrangement is irrational because it considers the facts contained in the violation notice to be prima facie evidence of a parking violation.[18] They say that any such rule is constitutionally impermissible because a ticket recipient can be found liable without City having provided any evidence outside of the "accusations" contained in the notice.

That mischaracterizes the administrative adjudication procedure set out in the Ordinance. It is true, as plaintiffs assert, that the information in the notice is considered

prima facie evidence. But the same Code passages that contain that prima facie treatment (Code §§ 9–100–070(c) and 9–100–080(e)) also require that the information on the notice meet the following requirements (set out at Code § 9–100–030(b)):

> The issuer of the notice shall specify on the notice his identification number, the particular parking regulation allegedly violated, the make and state registration number of the cited vehicle, and the place, date, time and nature of the alleged violation and shall certify the correctness of the specified information by signing his name as provided in Section 11–208.3 of the Illinois Vehicle Code, as amended.

Thus City is not automatically entitled to treat the information in the notice alone as prima facie evidence—the additional quoted requirements must be complied with. Further, ticket recipients have a full opportunity to rebut the prima facie case either at an in-person hearing or via the adjudication by mail. And if ticket recipients opt for in-person hearings, they may request that the hearing officer subpoena witnesses to enable the recipients to support their defenses (Code § 9–100–080(d)). If any ticket recipient wishes to challenge liability, City is simply not able to railroad a parking violation through to a finding of liability based on the information in the notice alone unless it is able to withstand that challenge under the scrutiny of a hearing officer.

In any case, the administrative structure set up by the Ordinance is rationally connected to a governmental interest, specifically the "fair and efficient enforcement of [parking] regulations" (Code § 9–100–010(c)). From City's perspective it is able to enforce its parking regulations and to process parking tickets without overburdening the court sys-

---

17. City also attempts to rely on suggestions in a number of Seventh Circuit decisions that a person advancing a substantive due process claim must also allege a violation of some other constitutional right (see the discussion in *Polenz v. Parrott*, 883 F.2d 551, 557–58 (7th Cir.1989)). There are several flaws in City's position, but no side excursion into that analysis is necessary because City prevails without having to lean on that reed.

18. Code §§ 9–100–070(c) and 9–100–080(e) state:

> No violation may be established except upon proof by a preponderance of the evidence; provided, however, that a parking violation notice, or a copy thereof, issued in accordance with Code § 9–100–030 shall be prima facie evidence of the correctness of the facts specified therein.

tem. But City is not the only party that benefits from the Ordinance's administrative structure: Ticket recipients have an opportunity to challenge a ticket without being forced to comply with formal rules of evidence or to hire an attorney. Those are clearly rational reasons supporting the arrangements set up by the Ordinance.

 Plaintiffs' Mem. 53–58 also contends that the administrative procedure is arbitrary and irrational because a preponderance-of-the-evidence standard *requires* the ticketing officer to appear before the hearing officer so that the hearing officer can evaluate the officer's credibility—something that does not invariably take place. Suffice it to say that it is rational for the Ordinance not to mandate the ticketing officer's appearance to testify in each case in which a parking ticket is issued. If the officer does not appear, and if the ticketed person's liability or lack of liability for violation of a parking regulation turns on the credibility of the officer, City may suffer the consequences—and if the ticketed person wishes to bring the officer to court in support of his or her own position, the hearing officer's subpoena power is adequate to the purpose. But to require ticketing officers to testify in support of *each* challenged ticket would be unduly burdensome on City.

Plaintiffs' final contention (Mem. 58) is that the Ordinance is irrational because it does not give the ticket recipient the opportunity to mount the defense that "he did not 'park.'" That argument, based on a misreading of the Ordinance, has already been dealt with.

In sum, plaintiffs cannot meet the heavy burden of showing that the Ordinance is not rationally connected to a government interest. Their substantive due process claim is also dismissed.

### Conclusion

This Court has certified the class of parking ticket recipients identified at the outset of this opinion. But they have gained a procedural ticket of entry to this federal court only to have that ticket punched as substantively invalid. All of the counts of the Complaint, and hence this action itself, are dismissed with prejudice.