Sandra TOWERS, Robert Sturdivant, and Kevin Amos, individually and on behalf of all others similarly situated, Plaintiffs,

v.

CITY OF CHICAGO, Defendant.

No. 96 C 6510.

United States District Court,
N.D. Illinois,
Eastern Division.

Sept. 30, 1997.

Thomas Peters, Mariel Nanasi, Chicago, IL, for Plaintiffs.

Diane Larsen, William Bazarek, City of Chicago Law Dept., Chicago, IL, for Defendant.

*MEMORANDUM OPINION AND ORDER*

KEYS, United States Magistrate Judge.

This matter comes before the Court on Plaintiffs' Motion to Certify Class pursuant to Federal Rule of Civil Procedure 23, Plaintiffs' Motion for Preliminary Injunction, and Defendant's Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). For the following reasons, Plaintiffs' Motion to Certify Class, and Plaintiffs' Motion for Preliminary Injunction are denied, and Defendant's Motion to Dismiss is granted.

## PROCEDURAL HISTORY

On August 30, 1996, Plaintiff, Sandra Towers, filed suit against Defendant, City of Chicago (the "City"), in state court, seeking a common law writ of certiorari to contest the final order of the City's administrative hearing officer and alleging violations of 42 U.S.C. § 1983 (" § 1983"). The City petitioned to remove the case to this Court, under federal question jurisdiction pursuant to 28 U.S.C. § 1441(b) & (c), and § 1446. On January 27, 1997, Ms. Towers filed her Second Amended Complaint ("Complaint") which added two additional Plaintiffs, Robert Sturdivant and Kevin Amos.

## BACKGROUND FACTS

### I. *Facts Relating to Plaintiff Towers*

On January 27, 1996, the City seized and impounded Ms. Towers' car pursuant to Chicago Municipal Code § 7–24–225, which authorizes the seizure of a vehicle that arresting officers have probable cause to believe contains a controlled substance. (Complaint at Count III, ¶¶ 7, 10, 14, 15.) At that time,

Ms. Towers' car was being operated by her acquaintance, Ray Chambers, without her "express permission." (Complaint at Count III, ¶¶ 8–9.) When police officers stopped and searched the car, they found a controlled substance on a passenger in the car and, therefore, impounded the vehicle. (Complaint at Count III, ¶¶ 10, 15, 16.) Ms. Towers was not present when her car was searched or seized, nor had she given anyone, including Mr. Chambers, permission to transport controlled substances in her car. (Complaint at Count I, ¶ 3; Count III, ¶¶ 11–12.)

The following day, even though Ms. Towers had the appropriate paperwork and monies due, the City did not release her car to her because it had not yet completed the necessary paperwork. (Complaint at Count III, ¶¶ 19–20.) Ms. Towers attempted to retrieve her car from the City between January 28 and February 6, 1996. (*Id.*) However, at no time was she given notice of her right to demand a preliminary hearing, and, for that reason, she did not request such hearing.[1] (Complaint at Count I, ¶ 6; Count III, ¶ 18.) Ms. Towers finally retrieved her car after paying a $500 cash bond and $225 for towing and storage fees. (Complaint at Count III, ¶¶ 21, 22, 28.)

On or about February 2, 1996, Ms. Towers received a letter notifying her of her right to a final hearing, at which she could contest the fees and costs of impoundment. (Complaint at Count III, ¶ 23.) At the hearing, pursuant to Chicago Municipal Code § 7–24–225, Ms. Towers was precluded from entering an innocent-owner defense because none of the ordinance's available defenses applied

---

1. Each of the City's ordinances challenged in the Complaint, under which vehicles are impounded, include provisions for a preliminary hearing on the probable cause for the seizure, followed by written notice of the right to a final administrative hearing within 30 days. Notice of the violations, and of the owner's right to request a preliminary hearing, is given verbally to the person in control of the vehicle at the time of seizure. Chicago Municipal Code § 11–4–1115(c)(3) (sound violations for excessive noise) provides that:

    [w]henever the owner of a vehicle seized pursuant to this section requests a preliminary hearing within 12 hours after the seizure, a hearing officer of the City shall conduct such preliminary hearing within 24 hours after the seizure, excluding Sundays and holidays.

    Section 8–20–015(c) (illegal firearms violations) contains the same provision, except that the request for preliminary hearing must be made within 12 hours, both in person, and in writing. Section 7–24–225(c) (controlled substances violations) requires the request for a preliminary hearing to be received within 24 hours and made in writing.

to her situation.[2] (Complaint at Count III, ¶¶ 23, 25.) Consequently, on March 8, 1996, a final administrative order was entered against Ms. Towers. (Complaint at Count I, ¶ 15.)

## II. *Facts Relating to Plaintiff Sturdivant*

In September of 1996,[3] Chicago police officers seized and impounded Mr. Sturdivant's car under Chicago Municipal Code § 8–20–015, which provides for the imposition of fines and fees against registered owners of automobiles that contain an unregistered firearm. (Complaint at Count II, ¶¶ 7–10.) A person, not Mr. Sturdivant, was in Mr. Sturdivant's car and possessed a firearm at the time of the violation.[4] (Complaint at Count II, ¶ 9.) Like Ms. Towers, Mr. Sturdivant was never notified by the City of his right to request a preliminary hearing, and did not request one. (Complaint at Count II, ¶ 11.) On or about October 1, 1996, Mr. Sturdivant received notice of his right to a final hearing concerning the impoundment of his car. (Complaint at Count II, ¶ 12.) Pursuant to Chicago Municipal Code § 8–20–015, Mr. Sturdivant was precluded from asserting his innocent-owner defense at a final hearing because no such defense is permitted under the ordinance.[5] Because Mr. Sturdivant cannot avail himself of any of the defenses provided by the ordinance, he "will lose the hearing. . . ." (Complaint at Count II, ¶¶ 14–15.)[6] Further, because he was unable to pay the $500 cash bond, and additional towing and storage fees, he could not use his vehicle

for approximately fifteen days. (Complaint at Count II, ¶¶ 20–21.)

## III. *Facts Relating to Plaintiff Amos*

On October 29, 1996, Mr. Amos was seated inside his automobile, with his windows rolled up, at a gas station. (Complaint at Count X, ¶¶ 8–10.) He was counting his gas money and playing his car radio. (*Id.* at ¶ 10.) Two Chicago police officers ordered Mr. Amos out of his car, searched him, and searched his vehicle. (Complaint at Count II, ¶¶ 11–13.) No contraband was found on his person or in his car. (Complaint at Count II, ¶ 14.)

The officers charged Mr. Amos with violating sound device restrictions for playing his radio too loudly, pursuant to Chicago Municipal Code § 11–4–1115(c). (Complaint at Count II, ¶¶ 15–16.) The officers then seized his vehicle, and gave him a date to appear in traffic court on that charge. (Complaint at Count II, ¶¶ 15–16.) The officers also gave Mr. Amos notice of his right to request a preliminary hearing to contest probable cause. (Complaint at Count II, ¶¶ 19–20.)

At the preliminary hearing, on the day following impoundment, Mr. Amos appeared, but the arresting officers did not; the hearing officer concluded that there was sufficient probable cause to hold his automobile. (Complaint at Count II, ¶¶ 19–20.) At the time of the filing of the Complaint, Mr. Amos had not received notice of his final hearing. (Complaint at Count II, ¶ 21.)[7] Mr. Amos

---

2. Under the ordinance, a registered owner can defend on three grounds only: (a) the vehicle used in the violation was stolen at the time and the theft was reported to the appropriate police authorities within 24 hours after the theft was discovered or reasonably should have been discovered; (b) the vehicle was being operated as a common carrier and the violation occurred without the knowledge of the person in control of the vehicle; or (c) the presence of the controlled substance and/or cannabis was authorized under the Controlled Substance Act and/or the Cannabis Control Act. (Complaint at Count III, ¶ 25.)

3. No specific date is provided in the Complaint.

4. It is unclear from the pleadings whether Mr. Sturdivant was anywhere near his vehicle at the time of the violation.

5. The only defenses available to defendants under Chicago Municipal Code § 8–20–015 are: (a)

the vehicle used in the violation was stolen at that time and the theft was reported to the appropriate police authorities within 24 hours after the theft was discovered or reasonably should have been discovered; (b) if the vehicle is operating as a common carrier and the violation occurs without the actual knowledge of the person in control of the vehicle; or (3) the owner proves that the presence of the firearm was permissible. (*Complaint at Count II, ¶ 13.*)

6. Mr. Sturdivant does not allege that, at the time of the filing of the Complaint, he had attended any final hearing or that any final judgment had been entered against him.

7. Plaintiff does not differentiate between the date police officers gave him at the time they seized his automobile, and receipt of final notice. It is the Court's understanding that the date given to him by the police officers to contest the violation

was unable to pay the $500 fine pursuant to the statute, for "many days." (Complaint at Count II, ¶ 22.)

## DISCUSSION

### I.  Defendant's Motion to Dismiss

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a motion to dismiss for failure to state a claim upon which relief can be granted tests the legal sufficiency of the complaint. *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80, (1957); *Chicago Dist. of Carpenters Pension Fund v. G & A Installations, Inc.,* No. 95 C 6524, 1996 WL 66098, at *1 (N.D.Ill. Feb.8, 1996). The Court must determine whether the plaintiffs would be entitled to relief under any set of facts that could be established in support of their claim. *Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 2232–33, 81 L.Ed.2d 59 (1984). In deciding a Rule 12(b)(6) motion, the court accepts as true all well-pled factual allegations in the complaint, and draws all reasonable inferences therefrom in the plaintiffs' favor. *Lashbrook v. Oerkfitz,* 65 F.3d 1339, 1343 (7th Cir.1995); *Conley,* 355 U.S. at 45–46, 78 S.Ct. at 101–02. The court will dismiss the complaint only when it appears beyond doubt that the plaintiffs have alleged no facts which, if proved, would entitle them to relief. *Id.; Chaney v. Suburban Bus Div. of Regional Transp. Auth.,* 52 F.3d 623, 627 (7th Cir.1995).

### A.  Count I: Ms. Towers' Common Law Writ of Certiorari

■ Ms. Towers seeks a common law writ of certiorari for review of the final order of the administrative hearing held on February 22, 1996.[8] Under Illinois law, state courts may issue common law writs of certiorari to an inferior administrative tribunal, if that tribunal has exceeded its jurisdiction, or proceeded illegally, and no direct appeal or review of its proceedings is available. *Goodfriend v. Board of Appeals of Cook County,*

18 Ill.App.3d 412, 305 N.E.2d 404, 409 (1973); *see Holstein v. City of Chicago,* 29 F.3d 1145, 1148 (7th Cir.1994) (recognizing defendant's right to seek review of municipality's administrative decision by state circuit court under writ of certiorari, citing *Graff v. City of Chicago,* 9 F.3d 1309, 1325 (7th Cir.1993), *cert. denied,* 511 U.S. 1085, 114 S.Ct. 1837, 128 L.Ed.2d 464 (1994)).

■ The reviewing court cannot examine extrinsic evidence absent statutory authorization. *Goodfriend,* 305 N.E.2d at 410. Nor can it weigh evidence or substitute its judgment for the discretion and judgment of the administrative agency. *Quinlan and Tyson, Inc. v. City of Evanston,* 25 Ill.App.3d 879, 324 N.E.2d 65, 74 (1975). A reviewing court can, however, examine all questions of fact and law contained in the record, including a de novo review of any constitutional issues. *Holstein,* 29 F.3d at 1148 (citing *Howard v. Lawton,* 22 Ill.2d 331, 175 N.E.2d 556 (1961)). Under Illinois law, a plaintiff seeking administrative review on constitutional grounds must raise those issues at the "earliest opportunity." *Head–On Collision Line, Inc. v. Kirk,* 36 Ill.App.3d 263, 343 N.E.2d 534, 538 (1976). Generally, a reviewing court should not interfere with an administrative body's discretionary authority, unless exercise of it is arbitrary and capricious, or such action is against the manifest weight of the evidence. *Hanrahan v. Williams,* 174 Ill.2d 268, 220 Ill.Dec. 339, 342, 673 N.E.2d 251, 254 (Ill.1996), petition *for cert. filed,* 65 U.S.L.W. 3799 (U.S. Mar. 3, 1997) (No. 96–1860).

The gravamen of Ms. Towers' claim is that she was denied a preliminary hearing and the opportunity to plead her innocence at the final hearing. Ms. Towers does not allege that the legal standard was misapplied to the facts of her case, nor that the administrative tribunal acted capriciously, arbitrarily or illegally. As addressed below, the Court finds that the City's procedures, regarding Plaintiffs' § 1983 claims, did not (as applied), and

in traffic court, and notice of his final hearing, may represent notice for the same hearing.

**8.**  Mr. Sturdivant and Mr. Amos do not join Ms. Towers' Petition for a Common Law Writ of Certiorari. The pleadings indicate that neither

Mr. Sturdivant nor Mr. Amos had attended a final hearing or received a final administrative order concerning their alleged violations of the City's ordinances.

do not (facially), violate the Due Process Clause of the Fourteenth Amendment. Accordingly, Ms. Towers' claim for Common Law Writ of Certiorari in Count I is dismissed.[9]

### B. Counts II through IX, XI and XIII: § 1983 Claims

Section 1983 provides a cause of action for persons deprived of constitutionally protected rights. Specifically, § 1983 imposes liability on those persons who, acting under color of state authority, deprive another of a right secured by the Fourteenth Amendment. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 152, 90 S.Ct. 1598, 1605–06, 26 L.Ed.2d 142 (1970). Congress passed § 1983 " 'for the express purpose of 'enforc[ing] the Provisions of the Fourteenth Amendment.' " *Lugar v. Edmondson Oil Co., Inc.*, 457 U.S. 922, 934, 102 S.Ct. 2744, 2752, 73 L.Ed.2d 482 (1982) (quoting *Lynch v. Household Finance Corp.*, 405 U.S. 538, 545, 92 S.Ct. 1113, 1118–19, 31 L.Ed.2d 424 (1972) (quoting Cong. Globe, 42 Cong., 1st Sess., App. 69 (1871))).

To state a claim under § 1983, a plaintiff must allege a violation of a federal right. *Wright v. Roanoke Redevelopment and Hous. Auth.*, 479 U.S. 418, 431–32, 107 S.Ct. 766, 774–75, 93 L.Ed.2d 781 (1987); *Middlesex County Sewerage Auth. v. National Sea Clammers Ass'n*, 453 U.S. 1, 19, 101 S.Ct. 2615, 2625–26, 69 L.Ed.2d 435 (1981). Municipalities are liable under § 1983 for actions or policies which are found to be either unconstitutional or illegal. *Monell v. Department of Soc. Servs.*, 436 U.S. 658, 660, 98 S.Ct. 2018, 2020, 56 L.Ed.2d 611 (1978). However, a municipality's liability is limited to those acts which it has "officially sanctioned or ordered." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480, 106 S.Ct. 1292, 1298, 89 L.Ed.2d 452 (1986).

In the Complaint, Plaintiffs allege that the City deprived them of their federally protected constitutional rights by enforcing various vehicle seizure ordinances. Counts II, III, VI, VII, and XI assert due process violations under the Fourteenth Amendment; Counts IV, V, and XIII assert violations of the Excessive Fines Clause of the Eighth Amendment, made applicable to the states by the Fourteenth Amendment; Counts VIII and IX assert unreasonable seizures under the Fourth Amendment, made applicable to the states by the Fourteenth Amendment; and Count XIV asserts a class action claim for Counts II–VI, XI and XIII.[10] For the reasons set forth below, all of Plaintiffs' claims are dismissed for failure to state a claim on which relief can be granted.

#### 1. Counts II, III, VI, VII and XI: Fourteenth Amendment Due Process Claims

Plaintiffs allege that the City's ordinances, as "written and enforced," violate the Due Process Clause of the Fourteenth Amendment, because none provide for a prompt post-deprivation hearing, and because they

---

**9.** In the first of a series of inauspicious arguments, the City argues that Plaintiffs dismissed supplemental jurisdiction for Count I under 28 U.S.C. § 1367 in their footnote expanding upon a paragraph discussing Counts II–XIV. (Pls.' Resp., at 6 n. 3.) The Court does not read this section of Plaintiffs' memorandum to include any expression of their intent to dismiss Count I.

Second, the City erroneously contends that the Court lacks subject matter jurisdiction over Count I because all § 1983 counts fail to state a claim. However, the City overlooks the fact that it, and not Ms. Towers, removed this case to federal court for subject matter jurisdiction over the § 1983 claims pursuant to 28 U.S.C. §§ 1441 and 1446. (Def.'s Pet. For Removal, at 1.) In the same vein, the City also reasons that Plaintiffs' § 1983 claims are supplemental to Plaintiff's Common Law Writ of Certiorari, under Count I. (Def.'s Reply, at 3.) The reverse is true. Therefore, Ms. Towers' Common Law Writ of Certiora-

ri, under Count, I is before the Court under supplemental jurisdiction.

Lastly, the City argues that Ms. Towers waived her right to assert any constitutional claims by failing to present them at the earliest possible time. (Def.'s Reply Mem., at 3–5.) On the contrary, the record clearly illustrates that Ms. Towers has stated her constitutional claims at every step of this litigation from the start. (See, e.g., Def.'s Pet. for Removal, at Ex. A.)

Therefore, the Court rejects the City's argument that Ms. Towers waived her right to petition for common law writ of certiorari by voluntarily dismissing all supplemental claims under 28 U.S.C. § 1367.

**10.** The City's Motion to Dismiss for failure to state a claim under Rule 12(b)(6) does not include Counts X and XII of the Complaint. However, for the reasons set forth below, said Counts are also dismissed.

preclude plaintiffs from asserting an innocent-owner defense during administrative hearings. Because these Counts contain both procedural and substantive due process claims, the Court will address each in turn.[11]

### a. Procedural Due Process Analysis

■ Procedural due process prohibits the government from taking some action, which directly impairs a person's property interests, before a hearing is held during which the affected person may be heard. *Mathews v. Eldridge*, 424 U.S. 319, 332, 96 S.Ct. 893, 901, 47 L.Ed.2d 18 (1976). The focus of this analysis is, therefore, on the hearing process, and not on the fairness of the rule. Because due process is a flexible concept, its procedural protections vary depending on the particular right being deprived. *Morrissey v. Brewer*, 408 U.S. 471, 481, 92 S.Ct. 2593, 2600, 33 L.Ed.2d 484 (1972).

To determine whether a challenged process adequately protects a federal right, the court must weigh three factors initially laid out in *Mathews*: (1) the type and importance of the private interest affected by the government action, including the duration and permanence of deprivation; (2) the risk of erroneously depriving such interest under the challenged procedures, and the "probable value ... of additional or substitute procedural safeguards; and (3) the governmental function involved and state interests served by such procedures, as well as the administrative and fiscal burdens, if any, that would result from the substitute procedures sought. *Miller v. City of Chicago*, 774 F.2d 188, 192 (7th Cir.1985), *cert. denied*, 476 U.S. 1105, 106 S.Ct. 1949, 90 L.Ed.2d 358 (1986) (citing *Mathews*, 424 U.S. at 335, 96 S.Ct. at 903; *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 434, 102 S.Ct. 1148, 1156–57, 71 L.Ed.2d 265 (1982)).

For the first *Mathews* factor, Plaintiffs have a protected property interest in the use of their automobiles under § 1983. *Sutton v. City of Milwaukee*, 672 F.2d 644, 645–46 (7th Cir.1982). Because this property interest includes the use of the automobiles, and because "[a]utomobiles occupy a central place in the lives of most Americans, providing access to jobs, schools, and recreation as well as to the daily necessities of life," Plaintiffs have a substantial interest in a prompt hearing on whether seizures of the vehicles were conducted with probable cause. *Coleman v. Watt*, 40 F.3d 255, 261 (8th Cir.1994).

Under the second *Mathews* factor, the risk of wrongful deprivation, due to procedural faults, is minimal here. Plaintiffs' constitutional right to procedural due process is protected by the procedures employed by the City and the review procedures provided under Illinois and local laws. Under the challenged ordinances, an individual cited for a violation has notice of, and a right to, a preliminary post-deprivation hearing. (*See* Chicago Municipal Code §§ 7–24–225(c), 8–20–015(c) and 11–4–1115(c)(3), *supra* n. 1.) Additionally, a person has notice of, and a right to, a final hearing. (Complaint at Count II, ¶ 12.) These post-deprivation hearings are adequate to remedy the wrongful deprivations of vehicles. *See Holstein*, 29 F.3d at 1148 (citing *Kauth v. Hartford Ins. Co. of Ill.*, 852 F.2d 951, 955–56 (7th Cir. 1988)).

Furthermore, if the vehicle owner is unhappy with the administrative decision, he or she may petition the Illinois circuit courts for a common law writ of certiorari, to review the findings of a municipality's administrative body. *Graff*, 9 F.3d at 1325. Finally, if the owner is able to prove that such an administrative hearing is illusory or futile, he or she can bring a state court action for replevin.[12] *Holstein*, 29 F.3d at 1148 (citation omitted).

---

11. The City argues that Plaintiffs have only asserted facial challenges, to the constitutionality of its ordinances, for failure to provide procedural due process. (Def.'s Resp. to Sur–Reply, at 4.) viewing it in a light most favorable to the Plaintiffs, this Court reads Plaintiffs' Complaint as asserting both facial and as applied challenges with regard to procedural and substantive due process violations. However, this distinction does not impact the result of the Court's constitu-

tional analysis of the City's challenged ordinances.

12. Under the facts presented in this case, Ms. Towers would have been able to bring an action for replevin, in state court, under 735 ILL. COMP. STAT. 5/19–101 *et seq.* (West's 1993 & Supp. 1997). Replevin is an action whereby an owner, who is entitled to possession of goods or chattels, may recover them from one who has wrongfully

Plaintiffs argue that their right to a preliminary hearing is illusory because the City has no method of notifying those owners who are not in possession of their cars at the time of seizure. (Plaintiffs' Response, at 23.) The City, however, is not obligated to locate and notify every registered owner. Rather, it must use procedures "reasonably calculated" to notify the owner. *Robinson v. Hanrahan,* 409 U.S. 38, 40, 93 S.Ct. 30, 31–32, 34 L.Ed.2d 47 (1972). Each of the challenged ordinances requires the ticketing police officer to give notice of the owner's rights. This notice can be given to the person identifying himself as the owner, or the person in control of the vehicle, at the time of the alleged violation and seizure. The Court finds that this practice is reasonably calculated to notify owners of their rights.

Contrastingly, in *Coleman,* 40 F.3d at 261, the Eighth Circuit pronounced that a seven day delay in notifying a registered owner about the seizure of his car was excessive and constituted a procedural due process violation. The crux of the Eighth Circuit's analysis was that, even though "[t]he risk of erroneous deprivation is neither increased nor decreased by the timing of the postdeprivation hearing .... a more expeditious hearing would significantly reduce the harm suffered by owners wrongly deprived of the use of their vehicles." *Coleman,* 40 F.3d at 261.

The parties dispute whether Plaintiffs truly had access to a preliminary, post-deprivation hearing. Plaintiffs cite several cases to demonstrate that the City's final hearing, thirty days after the seizure occurred, is too far delayed to provide due process.[13] Plaintiffs argue that, because they did not receive notice of their right to a preliminary hearing, the first and only post-deprivation hearing to which they are entitled under the ordinances becomes the final hearing before the administrative hearing officer. Plaintiffs further argue that, because these hearings occur thirty days after the City impounds a vehicle, an innocent owner is wrongly denied use of his vehicle for a prolonged period.

The City, on the other hand, contends that, because the preliminary hearing is available within twenty-four hours of the seizure, it, and not the final hearing, is the true measure of the delay in receiving a hearing. The City argues that, because these hearings occur within twenty-four hours from the time of impoundment, there is no constitutional violation. The City's policy under the ordinances is similar to that in *Breath v. Cronvich,* 729 F.2d 1006 (5th Cir.1984), cert. denied, 469 U.S. 934, 105 S.Ct. 332, 83 L.Ed.2d 268 (1984). In that case, the Fifth Circuit upheld the constitutionality of an appearance bond procedure, coupled with a hearing on the underlying traffic violations within a reasonable time. Id. at 1011. Similarly, in this case, in addition to the preliminary hearing within twenty-four hours, the City permits owners to pay a $500 bond to retrieve their vehicles for normal use until the final hearing before an administrative

detained them. *Jim's Furniture Mart, Inc. v. Harris,* 42 Ill.App.3d 488, 1 Ill.Dec. 175, 356 N.E.2d 175, 176 (1976). A plaintiff in a replevin action must give the defendant five days' written notice of the state court hearing. 735 ILL. COMP. STAT. 5/19–106. At the hearing, the plaintiff must prove a "superior right to possession of the disputed property," and show a likelihood of prevailing on his or her claim to possession. Id. at 5/19–107.

Ms. Towers could have brought an action in replevin and argued that, by delaying the return of her vehicle, despite her willingness and ability to pay, the City wrongfully detained her property. In addition to receiving her car, Ms. Towers could also have been awarded damages caused by any wrongful delay. *Id.* at 5/19–125.

Because Ms. Towers has not brought an action in replevin, the issue of the merits of such action are not before the Court in the case at bar, and, therefore, are not subject to review.

**13.** Plaintiffs cite *Coleman,* 40 F.3d 255 (hearing after seven-day delay is unconstitutional); *Goichman v. City of Aspen,* 859 F.2d 1466 (10th Cir. 1988) (hearing within forty-eight hours of demand is constitutional); *DeFranks v. Mayor of Ocean City,* 777 F.2d 185 (4th Cir.1985) (one day's notice and hearing within twenty-four hours of demand is constitutional); *Cokinos v. District of Columbia,* 728 F.2d 502 (D.C.Cir. 1983) (hearing within twenty-four hours is constitutional); *Goichman v. Rheuban Motors, Inc.,* 682 F.2d 1320 (9th Cir.1982) (hearing after forty-eight hours is constitutional); and *Stypmann v. City and County of San Francisco,* 557 F.2d 1338 (9th Cir.1977) (hearing after five days is unconstitutional). (Pls.' Resp. to Def.'s Mot. to Dismiss, at 23–24.)

hearing officer.[14] Plaintiffs cite to no authority holding that this practice lacks adequate due process protections. *Cf. Breath,* 729 F.2d at 1006; *Goichman v. Rheuban Motors, Inc.,* 682 F.2d 1320 (9th Cir.1982) (holding due process does not require city to release cars to owners under bond pending hearing on merits of traffic violation) Clearly, these provisions, and the state and local remedies, provide adequate procedural due process protections.

Finally, as to the last prong of the *Mathews* analysis, Plaintiffs offer no substitute procedures other than a decree enjoining the City from impounding vehicles of allegedly innocent owners. While the Court is sympathetic to the plight of truly innocent owners faced with such a burden, it cannot overlook the governmental functions involved in, and the state interests served by, the enforcement of Chicago Municipal Code §§ 7–24–255 and 8–20–015. The City has a substantial interest in removing from the streets automobiles which are being used to transport illegal weapons or drugs. *See, e.g., Miller,* 774 F.2d at 193 (holding district court erred in its *Mathews* analysis by according no weight to defendant's interest in removing vehicles from the streets).

After balancing the three *Mathews* factors, it is evident that the City has not denied Plaintiffs due process. Therefore, the City's post-deprivation procedures under the challenged ordinances, coupled with Plaintiffs' rights to petition the state circuit courts for common law writs of certiorari, and to pursue actions in replevin, adequately protect Plaintiffs' Fourteenth Amendment Procedural Due Process rights.[15]

*i. Mr. Amos' Claims*

Mr. Amos did not plead that he had inadequate notice at any time before his prelimi-

nary or final hearings. Nor does he plead that he was denied a final hearing. Instead, he states that he was given notice of his right to a preliminary hearing, and that he "has not yet received notice of his final hearing." (Complaint, at Count X, ¶¶ 19–20.) Simply because he has not "yet" received his notice, does not mean that a final hearing was held without notice thereof. Alternatively, Mr. Amos may have received notice of a date to appear to contest his citation in traffic court when he initially received that citation from the police officers on October 29, 1996. In that event, Mr. Amos cannot assert that he was never notified, and therefore, denied due process. As such, Mr. Amos fails to allege that he was denied procedural due process by the City.

*ii. Ms. Towers' Claims*

■ At some point after the seizure of her automobile, Ms. Towers became aware of the fact that her car had been impounded. Ms. Towers does not allege that the City did not notify Mr. Chambers, the driver of the car at the time of seizure (as it is required to do under § 7–24–225(c)). Rather, she alleges that, because the City did not inform her directly of her right to a preliminary hearing, she was unable to request a preliminary hearing, and was, therefore, denied due process.

Although short of Ms. Towers' standard for notice, the City is only required to give notice "reasonably calculated" to apprise an individual of his or her rights. *Robinson,* 409 U.S. at 40, 93 S.Ct. at 31–32. The City's ordinances comport with this standard by requiring its police officers, at the time of a violation, to provide notice to the person who is in control of the vehicle. The City is not

---

**14.** Under each ordinance, at the final hearing, the hearing officer determines, by a preponderance of the evidence, whether the ordinance was violated. See, e.g., Chicago Municipal Code § 7–24–225(d)–(e). If the hearing officer finds that the ordinance was violated, the City will either: keep the posted $500 bond as payment for the fine; hold the vehicle until the fine is paid; or sell the vehicle, and apply the proceeds to the fine and costs, before returning the remaining monies to the registered owner. See § 7–24–225(d)–(e). The City sells the vehicle only when the period allowed for judicial review expires, or

when judicial review results in a finding for the City. § 7–24–225(f).

**15.** Even if Plaintiffs had, arguendo, asserted a due process claim because they were denied a pre-deprivation hearing, that claim too would have failed. *See, e.g., Holstein,* 29 F.3d at 1148 (finding Due Process Clause does not require a pre-deprivation hearing for owners of parked cars before towing; citing *Sutton v. City of Milwaukee,* 672 F.2d 644 (7th Cir.1982)).

required to ensure that every registered owner is personally notified of his or her right to a proceeding.

As illustrated above, the City provided Ms. Towers with the requisite procedural due process protections under the Constitution. For those reasons, Ms. Towers fails to state a claim upon which relief can be granted.

### iii. Mr. Sturdivant's Claims

Because Mr. Sturdivant's claims for procedural due process are the same as those asserted by Ms. Towers, he too has failed to state a claim upon which relief can be granted.[16]

### b. Substantive Due Process Analysis

Substantive due process guarantees that the essential purpose of a law or governmental action is compatible with the Constitution. Therefore, the fairness of the rule at hand is scrutinized, not the fairness of the decision-making process through which it is applied.

■ Plaintiffs also allege that the City's ordinances permit fines, constituting a criminal penalty of $500 (plus the towing and storage fees), while simultaneously denying an innocent-owner defense to those individuals appearing to contest the fines. The City

contends that the ordinances are not criminal in nature and that, as a civil penalty, the fines are constitutional. As developed below, the City's ordinances are analogous to civil in rem forfeiture actions, and do not levy criminal fines. As such, the Court finds that the City's ordinances prescribe constitutionally permissible civil fines.[17]

The City's fines are analogous to civil in rem forfeitures. In *Bennis v. Michigan*, 516 U.S. 442, 116 S.Ct. 994, 134 L.Ed.2d 68 (1996), the Supreme Court upheld the constitutionality of a Michigan in rem forfeiture statute, as it applied to innocent owners of seized property.[18] In *Bennis*, the plaintiff contended, inter alia, that she was denied her property interest without the due process protections of the Fourteenth Amendment, because she was denied notice or an opportunity to contest the forfeiture. *Id.* at ——, 116 S.Ct. at 997. The plaintiff claimed that she was entitled to assert that she was an innocent owner, and that she had entrusted the car to her husband, who, unbeknownst to her, used it to violate Michigan's indecency laws (prostitution). *Id.*

The Supreme Court reviewed a "long, unbroken line" of cases upholding in rem for-

---

**16.** The City argues that, because Mr. Sturdivant had not yet availed himself of his final hearing, he lacks standing to challenge the City's ordinance, and that his claim is not ripe for adjudication. The City's contention is unfounded. To require Mr. Sturdivant to gain standing by forcing him to attend a final hearing, where his sole defense is precluded by the ordinance, would serve no legitimate purpose. See, e.g., *Sierra Club v. Marita*, 46 F.3d 606, 612 (7th Cir.1995) ("unless a plaintiff's purported interest in the matter is wholly speculative, waiting any longer to address that injury makes little sense."); *Triple G Landfills, Inc. v. Board of Comm'rs of Fountain County, Ind.*, 977 F.2d 287, 291 (7th Cir.1992) ("ripeness doctrine requires a live, focused case of real consequence to the parties. It does not require [plaintiff] to jump through a series of hoops, the last of which [he or she] is certain to find obstructed by a brick wall.")

**17.** Plaintiffs also allege that due process was denied because they were unable to cross-examine police officers at the hearings, and that the hearings themselves were conducted by the City's own biased hearing officers. Primarily because these assertions rest on the premise that the ordinances are criminal in nature, they fail to state a claim under the Due Process Clause of the Fourteenth Amendment.

First, for the reasons set out in this Opinion, the challenged ordinances are civil, not criminal, in nature. Second, there is no absolute right to confront police officers who issue citations for violations of the City's ordinances. *Van Harken v. City of Chicago*, 103 F.3d 1346, 1352 (7th Cir.) cert. denied, —— U.S. ——, 117 S.Ct. 1846, 137 L.Ed.2d 1049 (1997) (finding no absolute right in parking violations hearing to cross-examine ticketing officers). Third, Plaintiffs cannot assume that the City's hearing officers endeavor to "maximize the City's 'take'" during the hearings. *Van Harken*, 103 F.3d at 1352. (finding that the "adjudicative reliability of hearing officers is not fatally compromised" due to their employment relationship with the defendant).

Therefore, Plaintiffs arguments that they were denied due process at the administrative hearings fail to state a claim upon which relief can be granted.

**18.** In *Bennis*, the police found plaintiff's husband engaging in a sexual act, with a prostitute, in the family car. During the ensuing civil forfeiture in rem action against the car, the wife's lack of knowledge that the car would be used in a proscribed manner was not an available defense. *Bennis*, 516 U.S. at ——, 116 S.Ct. at 997.

feiture actions against innocent owners as constitutional. The Supreme Court drew a distinction between two specific situations: (1) where a vehicle is used by another without the owner's consent; and (2) where a vehicle is used by another with the owner's consent, but, for a purpose to which the owner did not consent. *Bennis*, 516 U.S. at —————— n. 5, 116 S.Ct. at 998–99 n. 5. Because the plaintiff in *Bennis* fell into this latter group, the Supreme Court held that her interests were not protected by the Due Process Clause of the Fourteenth Amendment against an in rem forfeiture action. Id. at ——, 116 S.Ct. at 999. Excerpts from two of the cited cases are particularly illustrative of this distinction:

> Cases often arise where the property of the owner is forfeited on account of the fraud, neglect, or misconduct of those intrusted with its possession, care and custody, even when the owner is otherwise without fault ... and it has always been held ... that the acts of [the possessors] bind the interest of the owner ... whether he be innocent or guilty.

*Id.* at ——, 116 S.Ct. at 998 (quoting *Dobbins' Distillery v. United States*, 96 U.S. 395, 401, 24 L.Ed. 637 (1877)).

> It is not unknown or indeed uncommon for the law to visit upon the owner of property the unpleasant consequences of the unauthorized action of one to whom he has entrusted it.... [Many areas of law] suggest that certain uses of property may be regarded as so undesirable that the owner surrenders his control at his peril....

*Id.* (Quoting *Van Oster v. Kansas*, 272 U.S. 465, 467–68, 47 S.Ct. 133, 134, 71 L.Ed. 354 (1926)).

The plaintiff in *Bennis* further argued that, notwithstanding the precedent of the in rem forfeiture cases, the Supreme Court should have required some level of culpability before ordering the forfeiture. *Id.* at ——,116 S.Ct. at 1000. In support of her argument, she cited *Austin v. United States*, 509 U.S. 602, 113 S.Ct. 2801, 125 L.Ed.2d 488 (1993).[19] She argued that, because the excessive fines clause was extended to protect the property interests of a convicted criminal, it is unreasonable to omit a requirement for some culpability in civil forfeiture actions against innocent owners. *Bennis*, 516 U.S. at ——, 116 S.Ct. at 1000. The Supreme Court rejected her argument because Austin did not concern an innocent owner defense, "other than to point out that if a forfeiture statute allows such a defense, the defense itself is 'punitive' in motive." *Id.*

In the case at bar, Plaintiffs raise the same arguments as did the plaintiff in *Bennis*. Because the circumstances in that case are analogous to this matter, the Court finds *Bennis* controlling here, and rejects Plaintiffs' arguments.

When the dust clears, Plaintiffs are left with a $500 fine (read "forfeiture") on their property because they, wrongfully or not, authorized others to use their automobiles. Under the City's ordinances, if they are unable to pay this fine, the automobile is sold by the City to pay the fine, and the remainder is returned to the registered owner.[20] Unlike *Bennis*, however, the City's procedures limit the forfeiture to $500 in every case, and do not require forfeiture of the entire automobile, nor a percentage thereof.[21]

On a separate, but related argument, Plaintiffs allege that the City's ordinances are criminal, and therefore are subject to criminal due process protections. Contrary to Plaintiffs' assertions, however, the City's

---

**19.** In *Austin*, the Supreme Court held that the Eighth Amendment's Excessive Fines Clause applies to civil in rem forfeiture actions, when the purpose of those proceedings was, in part, to punish. *Austin*, 509 U.S. at 622, 113 S.Ct. at 2812. Richard Austin was sentenced to seven years' imprisonment for possessing cocaine with an intent to distribute. In addition to the sentence, the government then filed an in rem forfeiture action to seize his mobile home and auto body shop. *Austin*, 509 U.S. at 604, 113 S.Ct. at 2803.

**20.** *See supra* n. 14.

**21.** This Court recognizes that the Supreme Court in *Bennis* did not overrule the Michigan high court's decision to reduce the forfeiture under its equitable powers. This fact, however, does not detract from the forcefulness of the Supreme Court's ultimate finding, that the civil in rem forfeiture procedure was constitutional.

ordinances and fines are not criminal in nature. In *United States v. Ward*, 448 U.S. 242, 248, 100 S.Ct. 2636, 2641, 65 L.Ed.2d 742 (1980), the Supreme Court defined a two step approach to determining whether a penalty is civil or criminal. The first step requires the court to determine whether the legislature expressed a civil or criminal purpose behind the statute. Id. at 249, 100 S.Ct. at 2641–42. If the statute was intended to be civil in nature, the second step is to determine "whether the statutory scheme [is] so punitive either in purpose or effect as to negate that intention." *Id.* To determine whether the purpose or effect of a statute is punitive, courts are guided by a seven-factor analysis established in *Kennedy v. Mendoza–Martinez*, 372 U.S. 144, 83 S.Ct. 554, 9 L.Ed.2d 644 (1963); *Van Harken v. City of Chicago*, 906 F.Supp. 1182, 1190–92 (N.D.Ill.1995), *aff'd as modified*, 103 F.3d 1346 (7th Cir.), *cert. denied*, —— U.S. ——, 117 S.Ct. 1846, 137 L.Ed.2d 1049 (1997) (holding fines for parking violations are not criminal in nature under the factors supplied by *Mendoza–Martinez*).

These factors are:

[1] Whether the sanction involves an affirmative disability or restraint, [2] whether it has historically been regarded as a punishment, [3] whether it comes into play only on a finding of scienter, [4] whether its operation will promote the traditional aims of punishment—retribution and deterrence, [5] whether the behavior to which it applies is already a crime, [6] whether an alternative purpose to which it may rationally be connected is assignable for it, and [7] whether it appears excessive in relation to the alternative purpose assigned....

*Mendoza-Martinez*, 372 U.S. at 168–69, 83 S.Ct. at 567–68 (footnotes omitted). Where a statute is intended to be civil, it should be found criminal "only with the clearest of proof...." *Ward*, 448 U.S. at 249, 100 S.Ct. at 2641–42.

Application of these factors, here, reveals that four of them (1, 3, 5, and 6) support the civil nature of the ordinances, two factors (2 and 7) are non-dispositive, and only one (4) supports the ordinances as being criminal in nature. Initially, an individual is not affirma-

tively restrained or disabled by the temporary seizure of his or her automobile. Further, a monetary fine is not an affirmative restraint or disability. *Van Harken*, 906 F.Supp. at 1191 (finding parking fine of $200 was not a restraint or disability). Moreover, the ordinance does not specify any required state of mind for violations. Thus, evidence of *scienter* is not required.

Additionally, because Illinois has enacted statutes criminalizing the same behavior (with substantial penalties possible), it is clear that the City's ordinances were not designed to duplicate the criminal penalties for these offenses. *See, e.g.,* Controlled Substances Act, 720 ILL. COMP. STAT. 570/100; 570/402 (West 1993 & Supp.1997) (Class 1 Felony); Cannabis Control Act, 720 ILL. COMP. STAT. 550/1, 550/4 (West 1993 & Supp.1997)(ranging from Class C Misdemeanor to Class 3 Felony); Deadly Weapons, 720 ILL. COMP. STAT. 5/24 (West 1993 & Supp. 1997) (Class A Misdemeanor for possessing firearm in automobile); *see also, Van Harken*, 906 F.Supp. at 1192 (finding parallel criminal statute providing fines for parking violations as petty offenses fails to demonstrate that parking fines are also criminal in nature).

Finally, "[w]hile every fine does have some retributive and deterrent effects," *Van Harken*, 906 F.Supp. at 1191, there are alternative reasons for the City's ordinances. For example, § 8–20–015 encourages registration of handguns and serves to regulate their transportation in highly populated environments, and § 7–24–225 encourages registration of controlled substances under state law. Thus, the challenged fines cannot be reasonably labeled excessive in relation to these alternative purposes.

Because the ordinances in question lack a historical reference, they cannot be analyzed directly against the intent and effect of former laws outlining the same violations. However, an analogy can be drawn to traffic violations which also involves vehicles, impoundment, and fines for violations. Parking fines are not criminal in nature. *See Van Harken*, 103 F.3d at 1350. However, because financial penalties have been imposed under both civil and criminal statutes, (*see,*

*e.g., Bennett v. Spear,* 516 U.S. 994, ——, 117 S.Ct. 1154, 1166, 137 L.Ed.2d 281 (1997) (Endangered Species Act of 1973, 16 U.S.C. § 1540(a)-(b), provides for both civil and criminal fines)), this factor favors neither position.

Although the City's ordinance arguably includes punitive and deterrent elements, it is also remedial in nature. While this factor, perhaps, best supports the argument that the ordinance is criminal, it cannot overcome the combined weight of the other factors.

In sum, analysis of the factors provided in *Mendoza–Martinez* demonstrates that the fines imposed for possession of an unregistered firearm or controlled substances in an automobile, or for playing loud music on a car stereo, are civil, not criminal, in nature. Accordingly, because enforcing the City's ordinances do not require criminal due process protections, the ordinances and fines do not violate the Substantive Due Process Clause of the Fourteenth Amendment.

### i. Mr. Amos' Claims

Mr. Amos does not state a claim on which relief can be granted. Mr. Amos fails to allege that the substance of § 11–4–1115, under which his hearing occurred, denied him due process. His claims are dissimilar from Ms. Towers and Mr. Sturdivant's, because he does not allege that the City's ordinance precludes an innocent-owner defense, as do the other challenged ordinances.

Further, Mr. Amos misdirects his pleadings toward a perceived substantive due process claim, which only supports his contention that the officers who seized and impounded his vehicle did so without probable cause. Simply stated, Mr. Amos' allegations concern only this factual, evidentiary determination. Thus, Mr. Amos fails to state a claim upon which relief can be granted, for Fourteenth Amendment due process violations.

### ii. Ms. Towers' Claims

Ms. Towers fails to state a claim for substantive due process violations under the Fourteenth Amendment. The Court finds *Bennis* to be controlling here. Because civil forfeiture actions need not supply an innocent-owner defense to comport with the constitutional substantive due process safeguards, the City's ordinances do not violate Ms. Towers' right to due process. Thus, Ms. Towers fails to state a claim upon which relief can be granted, for Fourteenth Amendment due process violations.

### iii. Mr. Sturdivant's Claims

Likewise, Mr. Sturdivant has failed to state a claim upon which relief can be granted. Mr. Sturdivant's allegations directly mirror those of Ms. Towers. Although his claims do permit an inference that he intended to challenge the statutes both facially and as applied to him in this instance, the claims fail equally under either approach.

### 2. Counts IV, V and XIII: Eighth Amendment Excessive Fines Claims

The term "fine" denotes payments extracted by the government, which are payable to the government. *See Browning–Ferris Indus. of Vermont, Inc. v. Kelco Disposal, Inc.,* 492 U.S. 257, 265–66, 109 S.Ct. 2909, 2915–16, 106 L.Ed.2d 219 (1989) (finding Excessive Fines Clause was intended to limit fines by the government, and not to limit private civil damages). Eighth Amendment [22] protections against excessive fines are not limited to criminal proceedings; they also apply to civil proceedings. *Austin,* 509 U.S. at 607, 113 S.Ct. at 2804.

■ Plaintiffs assert claims under the Eighth Amendment, contending that a $500 fine is unconstitutionally excessive because it bears no relationship to their culpability as innocent owners. To buttress their assertions, Plaintiffs contend that two Supreme Court cases support this rationale. (Pls.' Resp., at 18–21 (citing *Austin,* 509 U.S. 602, 113 S.Ct. 2801, 125 L.Ed.2d 488; *Alexander v. United States,* 509 U.S. 544, 113 S.Ct. 2766, 125 L.Ed.2d 441 (1993)).) On the other hand, the City contends that *Bennis,* —— U.S. ——, 116 S.Ct. 994, 134 L.Ed.2d 68, controls, and this Court agrees.

---

**22.** "Excessive bail shall not be required, nor excessive fines imposed, nor cruel or unusual punishments inflicted." U.S. CONST. amend. VIII.

In Austin, the Supreme Court looked past the labels of "criminal" and "civil" penalties to determine whether a civil in rem forfeiture procedure can constitute punishment. *Austin*, 509 U.S. at 610, 113 S.Ct. at 2805–06. The Supreme Court recognized, as it had before in *United States v. Halper*, 490 U.S. 435, 448, 109 S.Ct. 1892, 1901–02, 104 L.Ed.2d 487 (1989), that civil sanctions, in addition to serving remedial purposes, can serve retributive and deterrent purposes as well. *Id.* at 610, 113 S.Ct. at 2805–06. It is only when a civil sanction serves either a retributive or deterrent purpose, that it becomes, in part, punishment. *Id.* Thus, the Supreme Court held that the Eighth Amendment applies to civil in rem forfeiture proceedings only when those proceedings contain retributive or deterrent elements. *Id.* at 622, 113 S.Ct. at 2812.

In its analysis, the Supreme Court discussed the evolution of civil in rem forfeiture actions and its historical rejection of the innocent-owner defense in that context. *Austin*, 509 U.S. at 615, 113 S.Ct. at 2808. In particular, the Supreme Court stated that:

> [F]orfeiture has been justified on two theories—that the property itself is "guilty" of the offense, and that the owner may be held accountable for the wrongs of others to whom he entrusts his property. Both theories rest, at bottom, on the notion that the owner has been negligent in allowing his property to be misused and that he is properly punished for that negligence.

*id.*

In both *Austin* and *Alexander*, the plaintiffs were convicted criminals, serving prison sentences. In *Austin*, the government had, in addition to his criminal sentence of seven years imprisonment (for possession of cocaine with intent to deliver), sought and obtained a civil forfeiture of the plaintiff's mobile home and body shop. *Id.* at 604, 113 S.Ct. at 2803. In *Alexander*, the government had, in addition to his criminal sentence of six years imprisonment and fine of $100,000 (for tax evasion, obscenity offenses and RICO violations), sought and won forfeiture of the plaintiff's wholesale and retail business assets and $9 million. *Alexander*, 509 U.S. at 548, 113 S.Ct. at 2769–70.

Because civil forfeitures against criminals must be reviewed for excessiveness under *Austin* and *Alexander*, Plaintiffs argue that the same should be done for innocent owners who have committed no crimes. This argument, however, ignores the principles laid out in *Bennis* concerning the non-availability of an innocent-owner defense in forfeiture proceedings. Unlike *Bennis*, neither *Austin* nor *Alexander* promulgates any findings or rulings on the innocent-owner defense. *See Austin*, 509 U.S. at 616 n. 10, 113 S.Ct. at 2809 n. 10 (noting "[b]ecause the forfeiture provisions at issue here exempt 'innocent owners,' we again have no occasion to decide in this case whether it would comport with due process to forfeit the property of a truly innocent owner."). Moreover, the Supreme Court also cautioned against relying on a mistaken technical distinction between in rem and in personam proceedings. *Austin*, 509 U.S. at 616, 113 S.Ct. at 2808–09. In sum, the Supreme Court's decision only holds that, forfeiture is a payment to a sovereign as punishment, at least in part, for some offense, subject to the limitations established by the Eighth Amendment's Excessive Fines Clause. *Id.* at 622, 113 S.Ct. at 2812.

Whether a fine is excessive is a question for this Court to determine. *Id.; Alexander*, 509 U.S. at 559, 113 S.Ct. at 2775–76. The essential point of Plaintiffs' claims is that they lacked *scienter*; they were unaware of, and did not authorize the use of, their vehicles for illegal purposes. If the City's ordinances required a finding of *scienter*, Plaintiffs could state a claim. The ordinances, however, like the one at issue in *Bennis*, do not require a showing of scienter, making Plaintiffs allegations irrelevant.

In between the polar extremes of having property stolen, and expressly consenting to use of the property for illegal purposes, Plaintiffs find themselves in a conundrum. If they did not consent to the use of their cars at all, it is reasonable to presume that the cars had been stolen. The City's ordinances provide for such an event, by permitting victims of theft to report their automobiles as stolen within twenty-four hours from the time they discover the theft, or reasonably should have discovered the theft. If the

car is not reported stolen, even if an owner does not expressly consent to permit another to use his or her vehicle, the only rational conclusion is that the owner gave at least *some* degree of implied consent to that person to use the car, either before or after its use. When an owner consents to release control of his or her vehicle to another person, expressly or otherwise, the owner also accepts the risks inherent to that loss of control. *See Harmony v. United States,* 43 U.S. (2 How.) 210, 234, 11 L.Ed. 239 (1844) (holding that the offenses of the captain and crew bind the owner of a ship, "whether he be innocent or guilty; and [the owner] impliedly submits to whatever the law denounces as a forfeiture attached to the ship by reason of their unlawful or wanton wrongs.").

Through this notion of attaching responsibility to one's property, the law endeavors to create "the desirable effect of inducing [owners] to exercise greater care in transferring possession of their property." *Calero–Toledo v. Pearson Yacht Leasing Co.,* 416 U.S. 663, 688, 94 S.Ct. 2080, 2094, 40 L.Ed.2d 452 (1974). The durability of this concept is evidence of the force of its rationale. Over one hundred years ago, the Supreme Court stated:

> [T]he unlawful acts of the [borrower] bind the owner of the property, in respect to the management of the same, as much as if they were committed by the owner himself. Power to that effect the law vests in him by virtue of his [loan]; and, if he abuses his trust, it is a matter to be settled between him and his [borrower]; but the acts of violation as to the penal consequences to the property are to be considered just the same as if they were the acts of the owner.

*Dobbins' Distillery v. United States,* 96 U.S. 395, 404, 24 L.Ed. 637 (1877). The Court does not see any reason to abandon this well-reasoned rationale under the circumstances presented in the case *sub judice.*

Ms. Towers and Mr. Sturdivant state, in support of their claims: that they have committed no crimes; did not consent to the use of their vehicles by another; did not consent and were unaware that illegal drugs and/or firearms were present in their automobiles; did not know, or should not have reasonably known, that the occupant controlling their vehicles possessed an illegal item. (Complaint, Count IV at ¶ 32; Count V at ¶ 35.) [23] None of the plaintiffs allege that their vehicles were stolen. Therefore, they have, in some measure, consented to the use of their vehicles by another, and the consequences thereof are "a matter to be settled between [Plaintiffs] and [those who have used their vehicles]." *Dobbins' Distillery,* 96 U.S. at 404.

For the reasons set forth above, the Court finds that the City's fines are analogous to fines levied in civil in rem forfeiture proceedings, and are not excessive under the Eighth Amendment's Excessive Fines Clause.

### 3. *Counts VIII and IX: Fourth Amendment Unreasonable Seizure Claims*

Ms. Towers and Mr. Sturdivant assert that impoundment of their vehicles constitutes an unreasonable seizure under the Fourth Amendment.[24] The Fourth Amendment provides, in pertinent part, that the "right of the people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures, shall not be violated...." U.S. CONST. amend. IV.

A seizure of property occurs where "there is some meaningful interference with an individual's possessory interests in that property." *United States v. Jacobsen,* 466 U.S. 109, 113, 104 S.Ct. 1652, 1656, 80 L.Ed.2d 85 (1984). The Fourth Amendment is applicable to state actors by operation of the Fourteenth Amendment. *Ker v. California,* 374 U.S. 23, 30, 83 S.Ct. 1623, 1628, 10 L.Ed.2d

---

23. Mr. Amos simply contends that he is innocent for he has violated no state or federal law. (Complaint, Count XIII at ¶ 30.) He does not allege that he has been fined after availing himself of his right to a final hearing. As such, he lacks standing to assert a claim under the Eighth Amendment. *See Simon v. Eastern Kentucky Welfare Rights Org.,* 426 U.S. 26, 96 S.Ct. 1917, 48 L.Ed.2d 450 (1976) (holding federal courts must determine whether a plaintiff has been injured in order to determine if he or she has standing such that the court can exercise its jurisdiction).

24. Mr. Amos asserts no claims under the Fourth Amendment.

726 (1963). The Fourth Amendment's protection also applies to personal property in the civil context. *Soldal v. Cook County, Ill.,* 506 U.S. 56, 67, 113 S.Ct. 538, 546–47, 121 L.Ed.2d 450 (1992).

Courts have interpreted the Fourth Amendment to require any seizure by the government to be reasonable under any circumstances. *See United States v. Cardona–Sandoval,* 6 F.3d 15, 23 (1st Cir.1993) (seizure of ship); *Conner v. City of Santa Ana,* 897 F.2d 1487, 1492 (9th Cir.), *cert. denied,* 498 U.S. 816, 111 S.Ct. 59, 112 L.Ed.2d 34 (1990)(seizure of junk cars); *Soldal,* 506 U.S. at 72, 113 S.Ct. at 549 (removal of mobile home). Under the Fourth Amendment, " 'reasonableness is still the ultimate standard'...." *Soldal,* 506 U.S. at 71, 113 S.Ct. at 548–49 (quoting *Camara v. Municipal Court of City and County of San Francisco,* 387 U.S. 523, 539, 87 S.Ct. 1727, 1736, 18 L.Ed.2d 930 (1967)).

In this case, Plaintiffs do not allege that the officers impounding the vehicles acted unreasonably. Rather, they allege that the ordinances themselves, providing for the seizure of their vehicles, are unreasonable. In particular, neither Ms. Towers nor Mr. Sturdivant allege that the officers lacked probable cause to seize their vehicles (which contained illegal items). Rather, they contest the constitutionality of the ordinances, because of their application to innocent owners.

The test for whether a seizure is reasonable requires a careful balance between governmental and private interests. *Soldal,* 506 U.S. at 72, 113 S.Ct. at 549. In *Soldal,* the Supreme Court set out a high hurdle for persons challenging the reasonableness of a seizure. In that case, where officers were executing the law pursuant to a court order, the Supreme Court found that a showing of unreasonableness would be a "laborious task

indeed." *Id.* In view of the fact that an officer executes the law under an ordinance, just as he or she would under a court order, the same standard of reasonableness applies to the facts of the case at bar.

Because Plaintiffs have not stated a claim on which relief can be granted with respect to their alleged constitutional violations under § 1983, they have not demonstrated that the ordinances are unreasonable. Therefore, Plaintiffs have failed to state a claim upon which relief can be granted under the Fourth Amendment.

### 4. *Count XIV: Class Action Claim*

Plaintiffs reallege all of the foregoing constitutional challenges under a claim for class action. Because the Plaintiffs' claims, on which this proposed class action is based, fail to state a claim upon which relief could be granted, this class action count also fails. Assuming, arguendo, that Plaintiffs' previous claims had survived, Plaintiffs still fail to meet the requirements for certifying a class, as addressed below.

## II. *Plaintiffs' Motion to Certify Class*

■ Plaintiffs seek certification of a plaintiff class under Federal Rule of Civil Procedure 23.[25] There is broad judicial discretion in determining whether to allow the certification of a class action. *First Interstate Bank of Nevada, N.A. v. Chapman & Cutler,* 837 F.2d 775, 781 (7th Cir.1988) (certification decision is committed to the sound discretion of the court); *McGarvey v. Citibank,* No. 95 C 123, 1995 WL 404866, at *2 (N.D.Ill. July 5, 1995); *see also* 7B CHARLES A. WRIGHT, ARTHUR R. MILLER, & MARY KAY KANE, FEDERAL PRACTICE AND PROCEDURE, CIVIL 2D § 1785, at 119 (1986). To obtain class certification, plaintiffs must meet all of the requirements of Rule 23. *Patterson v.*

**25.** Plaintiffs' proposed class consists of registered owners of automobiles, in the City of Chicago, whose vehicles have been or will be impounded by the City, pursuant to Chicago Municipal Code §§ 7–24–225 (unlawful drugs in moving vehicles), 8–20–015 (Unlawful firearm in motor vehicle), 11–4–115 (sound device restrictions for excessive noise), 8–8–060 (prostitution or solicitation), and 8–16–020 (curfew). Because none of the named Plaintiffs has asserted claims concerning §§ 8–8–060 and 8–16–

020, they lack standing to bring claims on behalf of unnamed plaintiffs affected by those sections.

Accordingly, the proposed class would be limited to owners who: were precluded under the ordinances from pleading an innocent-owner defense, had not violated any state or federal criminal law, or activity proscribed by the remaining ordinances, yet were forced to pay a fine nonetheless. (Pls.' Mot. to Certify Class, at 2.)

*General Motors Corp.*, 631 F.2d 476, 480 (7th Cir.1980), cert. denied, 451 U.S. 914, 101 S.Ct. 1988, 68 L.Ed.2d 304 (1981). The burden of showing that all of the demanding requirements of Rule 23 have been satisfied, thereby demonstrating that certification is proper, rests with the plaintiff. *See General Telephone Co. of Southwest v. Falcon*, 457 U.S. 147, 161, 102 S.Ct. 2364, 2372–73, 72 L.Ed.2d 740 (1982); *Trotter v. Klincar*, 748 F.2d 1177, 1184 (7th Cir.1984); *Riordan v. Smith Barney*, 113 F.R.D. 60, 62 (N.D.Ill. 1986).

Rule 23 establishes a two-step procedure to determine whether a class action is appropriate. *See In re Bally Mfg. Sec. Corp. Litig.*, 141 F.R.D. 262, 266 (N.D.Ill.1992). Initially, the preliminary requirements set forth in Rule 23(a) must be met:

> (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

If these criteria are satisfied, the Court then considers whether the action falls within any of the three categories of class suits provided for in the subsection of Rule 23(b).[26]

Here, Plaintiffs fail to satisfy the numerosity requirement of Rule 23(a)(1). The court may find numerosity under Rule 23(a)(1) if the class is so numerous that joinder of all members of the class is impracticable. Plaintiffs are not required to specify an exact number in order to satisfy the requirement. *Vergara v. Hampton*, 581 F.2d 1281, 1284 (7th Cir.1978), cert. denied, 441 U.S. 905, 99 S.Ct. 1993, 60 L.Ed.2d 373 (1979). However, that does not mean that Plaintiffs can rely on a conclusory allegation that joinder is impracticable or on speculation as to the size of the class to prove the numerosity requirement. *Marcial v. Coronet Ins. Co.*, 880 F.2d 954, 957 (7th Cir.1989); *Patterson*, 631 F.2d

at 481; *Valentino v. Howlett*, 528 F.2d 975, 978 (7th Cir.1976).

Plaintiffs have made only conclusory allegations on the impossibility of joinder. These conclusions are based on their speculation that the proposed class is "extremely large," numbering potentially "hundreds, perhaps thousands" of members. (Pls.' Mem. in Supp. of Mot. to Certify Class, at 8–9.) Absent from Plaintiffs' motion or memorandum is any support for these figures. Plaintiffs argue that, common sense assumptions support a finding of numerosity where the class consists of a thousand or more members, and that the Court may make a good faith estimate as to the size of the proposed class. (*Id.*, citing *Grossman v. Waste Management Inc.*, 100 F.R.D. 781, 785 (N.D.Ill.1984); *In re VMS Sec. Litig.*, 136 F.R.D. 466, 473 (N.D.Ill.1991); *Gomez v. State Bd. of Educ.*, 117 F.R.D. 394, 399 (N.D.Ill.1987).)

While it is likely that hundreds or thousands of registered owners of motor vehicles appear before the City's hearing officers due to alleged violations of the challenged ordinances, Plaintiffs present no evidence that would permit this Court to infer that a sufficient number of these persons are "innocent-owners"—as described by the Plaintiffs— such that the requirements of Rule 23(a)(1) would be satisfied. *See, e.g., Gomez*, 117 F.R.D. at 399 (certifying class where statistics permitted court to draw reasonable conclusion of numerosity despite objections as to the reliability and accuracy of the statistics). Having been presented with only a large pool of persons within which a class may or may not exist, without more, the Court may not reason, in good faith, that numerosity has been met. *See Jackson v. Harris*, 84 F.R.D. 602, 605–06, (N.D.Ind.1979) (denying class certification where large pool of social security recipients did not justify any inference that they were affected by the challenged social security regulation).

The Court is sympathetic to Plaintiffs' argument that pursuing these individual claims

---

**26.** Here, Plaintiffs seek class certification under Rules 23(b)(2) and 23(b)(3). Under Rule 23(b)(2), once the class fulfills the threshold requirements, the court must then determine whether the defendant acted on grounds applicable to the class as a whole. Under Rule 23(b)(3), the court must determine whether a class action is "superior" to other methods of adjudication.

is cost-prohibitive to potential class members. (Pls.' Mem. in Supp. of Mot. to Certify Class, at 10.) However, that argument does not cause the Court to reach an inference that numerosity has been met.

The Court need not, therefore, discuss "commonality," "typicality," or "adequacy of representation," and, likewise, does not reach the second step of the class certification analysis. For the foregoing reasons, Plaintiffs motion for class certification is denied.

## III. Plaintiffs' Motion for Injunctive Relief

■■■ A motion for preliminary injunctive relief is properly brought under Federal Rule of Civil Procedure 65. Although the Seventh Circuit has stated the test in various ways, to prevail on a motion for preliminary injunction, the movant must initially demonstrate three threshold requirements. *Storck USA, L.P. v. Farley Candy Co.*, 14 F.3d 311, 313–14 (7th Cir.1994). The movant must show that: (1) the case has some likelihood of success on the merits;[27] (2) there exists no adequate remedy at law;[28] and (3) the movant will suffer irreparable harm if the preliminary injunction is not granted. *Id.* If these conditions are met, the initial threshold has been cleared and the Court must next: (1) balance the harm to the movant if the injunction is not issued, against the harm to the defendant if it is issued improvidently;[29] and (2) after weighing the interest of the parties, additionally consider the public interest (*i.e.* non-parties) consequences of either a grant or denial of the injunction.[30] *Id.*

Because Plaintiffs have failed to satisfy the criteria necessary to certify a class, any request for injunctive relief must be analyzed as applied to the individual movants. *Coleman*, 40 F.3d at 259. Without proof of an impending injury similar to the one allegedly already suffered, equitable relief is not available to a plaintiff absent some live controversy. *City of Los Angeles v. Lyons*, 461 U.S. 95, 105, 103 S.Ct. 1660, 1666–67, 75 L.Ed.2d 675 (1983). Further, a plaintiff may not speculate or hypothesize a claim of future injury to gain standing to effectively assert a claim for equitable relief. *Palmer v. City of Chicago*, 755 F.2d 560, 572 n. 9 (7th Cir. 1985), cert. denied, 481 U.S. 1049, 107 S.Ct. 2180, 95 L.Ed.2d 836 (1987); *see also Shipman v. Missouri Dep't of Family Servs.*, 877 F.2d 678, 681 (8th Cir.1989), cert. denied, 493 U.S. 1045, 110 S.Ct. 842, 107 L.Ed.2d 837 (1990).

In this case, none of the Plaintiffs has produced any evidence, or even alleged, that the City is likely to seize their vehicles in the future. Therefore, each individual Plaintiff lacks standing to request injunctive relief because each has failed to satisfy his or her burden of proof.

Even if, *arguendo*, the proposed class had been certified, Plaintiffs still fail to meet the preliminary threshold requirements for a class action. First, as discussed above, Plaintiffs have failed to state a claim on which relief can be granted. Therefore, there is *no* likelihood of success on the merits. *Kinney*, 994 F.2d at 1278. Second, Plaintiffs have alleged no damages other than fines, towing and storage fees, and monetary damages associated with the loss of their vehicles for a temporary period. Because money damages would suffice in this instance, Plaintiffs have an adequate remedy at law. *American Medicorp*, 475 F.Supp. at

27. In determining the likelihood of success on the merits, the court must at least find that the petitioner's chances are "better than negligible". *Kinney v. International Union of Operating Eng'rs, Local 150*, 994 F.2d 1271, 1278 (7th Cir.1993).

28. Lack of an adequate remedy at law ordinarily means that money damages would not suffice. *American Medicorp, Inc. v. Continental Illinois Nat'l Bank and Trust Co. of Chicago*, 475 F.Supp. 5, 7 (N.D.Ill.1977).

29. The balancing requires a "sliding scale" analysis wherein "the greater the movant's chance of success on the merits, the less strong a showing it must make that the balance of harms is in its favor." *Storck*, 14 F.3d at 314.

30. The public interest factor is not dispositive. *Abbott Labs. v. Mead Johnson & Co.*, 971 F.2d 6, 12 n. 3 (7th Cir.1992). Thus, for example, where a movant clears the threshold and shows that the balance of harms tip significantly in his favor, preliminary injunctive relief is proper even though it might slightly impair the public interest.

7. Likewise, Plaintiffs have failed to allege that they would suffer any irreparable harm.

Therefore, Plaintiffs fail to clear the threshold requirements for a preliminary injunction, and their Motion for Injunctive Relief is, therefore, denied.

### CONCLUSION

For the foregoing reasons, Plaintiffs have failed to state a claim upon which relief can be granted.

**IT IS THEREFORE ORDERED** that:

Defendant's Motion to Dismiss be, and the same hereby is, **GRANTED.**

**IT IS FURTHER ORDERED** that:

Plaintiffs' Motion to Certify Class, and Plaintiffs' Motion for Preliminary Injunctive Relief be, and the same hereby are, **DENIED.**